74 P.3d 231

**STATE of Arizona, Appellee,**

v.

**Brian Jeffrey DANN, Appellant.**

No. CR–02–0042–AP.

Supreme Court of Arizona,
En Banc.

Aug. 14, 2003.

Janet A. Napolitano, Former Arizona Attorney General, Phoenix, Terry Goddard, Arizona Attorney General, by Kent E. Cattani, Chief Counsel, Capital Litigation Section and Jim D. Nielsen, Assistant Attorney General, Attorneys for Appellee.

Susan M. Sherwin, Maricopa County Office of the Legal Advocate, Phoenix, by Brent E. Graham and Shughart, Thomson, Kilroy, Goodwin & Raup, P.C., Phoenix, by Rudolph J. Gerber, Attorneys for Appellant.

## OPINION

BERCH, Justice.

¶ 1 Appellant Brian Jeffrey Dann was convicted of three counts of first degree murder and one count of first degree burglary. Following an aggravation and mitigation hearing, the trial court sentenced Dann to death for the murder convictions and to a concurrent term of fifteen years' imprisonment for the burglary conviction. Dann appealed directly to this court, *see* Ariz. R.Crim. P. 31.2(b), which has jurisdiction pursuant to Article VI, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 13–4031 (2001).

## FACTS[1]

¶ 2 At approximately three o'clock in the morning on Easter Sunday, April 4, 1999,

1. We view the facts in the light most favorable to sustaining the verdict. *State v. Gallegos,* 178

Brian Dann entered Andrew Parks' apartment and shot and killed Andrew, Andrew's sister Shelly, who was Dann's girlfriend of two years, and Andrew's friend, Eddie Payan.

¶ 3 The preceding evening, April 3, 1999, Dann had stopped by the home of his former girlfriend, Tina Pace–Morrell, to borrow a gun. He first claimed that someone was trying to kill him, but then told Tina that Andrew had fired a gun at him earlier in the day and he needed a gun for protection because he wanted to go to Andrew's apartment to pick up some of his belongings. Failing to convince Dann not to go to Andrew's apartment, Tina loaned him her father's snub-nosed .38 caliber revolver.

¶ 4 Dann was next seen at the Double K, a bar he frequented in Phoenix. Kim Tran Robinson, the owner of the bar, said that Dann remained at the Double K until shortly before 1:00 a.m. Sunday morning. Kim testified to Dann's unusual request that she hold $1000 in cash because, as Dann explained, "I might go [to] jail tonight, or I might go hunting."

¶ 5 Dann's friend George Thomas was also at the Double K that evening. Just before 1:00 a.m., George approached Dann to talk. Dann did not want to talk in the bar, so he accompanied George to the parking lot. The bar owner saw the men still talking in the parking lot at 2:00 a.m. as she was locking up.

¶ 6 During their parking lot conversation, Dann told George that he and Shelly were having problems. He related that Shelly's brother, Andrew, had shot at him earlier that day. He showed George the revolver he had borrowed from Tina, stating that he intended to "straighten the problem out." When George asked Dann what he intended to do with the gun, Dann said he intended to use it to kill Andrew. In fact, George related that Dann told him ten to fifteen times that he intended to kill Andrew. At another point in the conversation, Dann asked George for an unlicensed, untraceable "throw-away" gun. George refused Dann's request and spent the next two hours attempting to talk Dann out

of his plan. By the end of the conversation, Dann seemed calmer and told George he was going home to go to bed.

¶ 7 Dann next spoke with Tina, who testified that Dann called between 2:00 a.m. and 3:00 a.m. on Sunday and told her that he had just shot three people. He asked what he should do. Tina advised him to turn himself in, but he refused. About thirty minutes later, he showed up at Tina's home to return the gun. While there, he described how he had forced his way into Andrew's apartment, "leveled the gun," and shot Andrew, then Shelly, and then Eddie. Dann recounted that he shot Andrew and Shelly because they laughed at him, and he shot Eddie because he had witnessed the shootings of Andrew and Shelly. Dann asked Tina to tell the police he was with her throughout the night, and thus provide him with an alibi. He then gave her the gun and five spent rounds. Before leaving, Dann washed up and borrowed some clothes.

¶ 8 At approximately six o'clock Sunday morning, Dann returned to Andrew's apartment. He called 911 to report that he had just discovered three bodies in the apartment. When Phoenix police officers arrived, they found Andrew in a chair, with a police scanner between his legs and a shotgun within reach. They also saw some bicycles, stereos, and "a lot of junk" in the apartment. In the main room of the apartment, a surveillance camera pointed toward the door. Although the video camera was on, there was no tape in the attached VCR to record any activity.

¶ 9 After learning of the deaths, Michael Parks, Andrew and Shelly's brother, rushed to the apartment. Michael observed that Dann did not seem upset over the murder of his girlfriend. Shortly after Michael's arrival, Dann asked him whether the police had recovered a tape from the surveillance camera. Michael spoke with Dann two or three other times that morning. Each conversation centered on the existence of a surveillance tape.

¶ 10 During the next few days, the police interviewed Tina and George and located the

Ariz. 1, 9, 870 P.2d 1097, 1105 (1994).

revolver Dann had borrowed from Tina. Ballistics analysis of the gun and the bullets recovered at the scene indicated that the bullets that killed Andrew, Shelly, and Eddie were fired from that revolver. The medical examiner testified that Andrew was shot twice, once in the chest and once in the right temple; that Shelly was shot once, in the top of her head above the right ear; and that Eddie was shot twice, once behind the left ear and once in his right forehead. The wounds on Shelly's temple and Eddie's forehead were soft contact wounds, indicating that the shooter took the time to place the weapon softly against their flesh before firing. The muzzle of the gun yielded DNA evidence, which testing showed to be blood belonging to Shelly Parks and Eddie Payan. On Wednesday, April 7, 1999, Dann was arrested for the triple homicide.

## DISCUSSION

### A. Introduction

¶ 11 In this direct appeal, Dann raises several issues stemming from events that occurred during the trial and its accompanying processes. Sentencing issues were not raised or briefed and will be discussed in a separate opinion. *See State v. Ring,* 204 Ariz. 534, 544, ¶ 6, 65 P.3d 915, 925 (2003) (*Ring III* ).

### B. Trial Issues

1. *Is Arizona's first degree murder statute unconstitutional?*

 a. *Is the statute unconstitutionally vague because it eliminates the requirement of actual reflection?*

¶ 12 Dann argues that Arizona's first degree murder statute is unconstitutionally vague. Dann's objection is twofold: First, he argues that A.R.S. section 13–1101(1) (Supp. 1999), the first degree murder statute, removes " 'actual reflection' as an element of premeditation," thus "obliterating the distinction between first degree murder and second degree murder," and, second, he maintains that, if actual reflection remains an element of first degree murder, the legislature has "impermissibly shifted the burden of proving

(or disproving) the existence of that element on to the defendant."

¶ 13 We addressed these concerns in *State v. Thompson,* 204 Ariz. 471, 65 P.3d 420 (2003), and do not address them further here. As that case makes clear, actual reflection is required, and the burden remains on the prosecution to prove each element of the offense beyond a reasonable doubt. *Id.* at 478, ¶ 27, 65 P.3d at 427.

 b. *Is the statute vague as applied?*

 i. *Did the instruction constitute error?*

¶ 14 Dann contends that the premeditated murder statute is "vague as applied" in his case. Nonetheless, he requested a jury instruction that included the statutory language "proof of actual reflection is not required." A.R.S. § 13–1101(1). The trial judge, however, declined to include the quoted clause and instead gave the following instruction on premeditation, to which Dann also objected:

> Premeditation means: Number one, that a person either intends or knows that his or her conduct will result in the death of another person; and

> Two, his or her intention or knowledge exists before the killing long enough to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion. But no appreciable length of time must elapse between the formation of the intent to kill and the act. They may be as instantaneous as successive thoughts of the mind. However, it must be longer than the time required to form the intent or knowledge that such conduct will cause death.

¶ 15 A version of this instruction garnered a caution, but withstood scrutiny by this court, in *State v. Guerra,* 161 Ariz. 289, 293–94, 778 P.2d 1185, 1189–90 (1989) (cautioning against giving a jury instruction that employs the "no appreciable space of time" and "instantaneous as successive thoughts" language, yet concluding that any error in the instruction was not reversible error); *see also State v. Eastlack,* 180 Ariz. 243, 259, 883 P.2d 999, 1015 (1994) (same).

¶ 16 Since *Guerra*, however, "this court has continued to stress that the state must show actual reflection by a defendant to prove first degree murder and to minimize the emphasis placed on the mere passage of time as a proxy for proving reflection." *Thompson*, 204 Ariz. at 476, ¶ 20, 65 P.3d at 425.[2] Even though "premeditation can occur as instantaneously as 'successive thoughts of the mind,' we have nonetheless required proof, whether direct or circumstantial, of actual reflection." *Id.; see also State v. Willoughby*, 181 Ariz. 530, 539, 892 P.2d 1319, 1328 (1995) ("Premeditation is established by evidence of a plan to murder formed after deliberation and reflection."); *State v. Kreps*, 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985) (same). Accordingly, if a court's instruction or a prosecutor's comment to the jury signals that the mere passage of time will suffice to establish the element of premeditation, those instructions or comments constitute error.

¶ 17 Although the instruction given here did not contain the clause at issue in *Thompson*, during closing argument the prosecutor highlighted to the jury that "premeditation can be as quick as one thought in the mind after another. So long as you had that opportunity, however brief, to reflect upon what you are about to do, that is premeditated murder." The prosecutor, however, also explained that premeditated murder requires an intent to kill and he detailed the evidence showing Dann's actual reflection on his decision to kill Andrew. But because the trial court's instruction on premeditation and the prosecutor's closing remarks indicated that premeditation could be shown by the passage of time alone, there was error as to an element necessary to support premeditated murder.

### ii. Was the error harmless?

¶ 18 Erroneous jury instructions are subject to a harmless error analysis. *See State v. Rodriguez*, 192 Ariz. 58, 63, ¶ 27, 961 P.2d 1006, 1011 (1998); *see also Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 1839, 144 L.Ed.2d 35 (1999) (applying harmless error analysis to jury instruction that omitted an element of the offense). An error is harmless if it appears "beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained," *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and if the court's review of the entire trial record shows "every fact necessary to establish every element of the offense beyond a reasonable doubt." *Rose v. Clark*, 478 U.S. 570, 581, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986) (internal quotation omitted). Following a thorough examination of the trial court record, the reviewing court must determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not 'reflec[t] a denigration of the constitutional rights involved.'" *Neder*, 527 U.S. at 19, 119 S.Ct. at 1839 (quoting *Rose*, 478 U.S. at 577, 106 S.Ct. at 3105) (alteration in original). If no rational jury could find otherwise even if properly instructed, "the interest in fairness has been satisfied and the judgment should be affirmed. As [the Supreme Court has] repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.'" *Rose*, 478 U.S. at 579, 106 S.Ct. at 3106 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

¶ 19 At trial, the State presented overwhelming evidence that Dann premeditated Andrew's murder: (1) Dann borrowed a gun from Tina; (2) a few hours before the murders, Dann gave the owner of the Double K $1000 to hold for him because he was "going hunting" and perhaps "going to jail"; (3) Dann told George ten to fifteen times that he intended to kill Andrew; (4) Dann asked George for an untraceable "throw-away" gun; and (5) Dann told Tina that he forced open Andrew's apartment door, "leveled the gun," then shot Andrew. Accordingly, we conclude that no reasonable jury could have found other than that Dann actually reflected on his decision to kill Andrew Parks, and we therefore conclude beyond a reasonable

---

**2.** Dann's trial took place before our decision in *Thompson* was issued. That opinion makes clear that unless the evidence demands it, future cases emphasizing time in lieu of actual reflection will receive close scrutiny. *Thompson*, 204 Ariz. at 471, 65 P.3d at 420.

doubt that the error in the jury instruction did not affect this verdict.[3] *See Rodriguez*, 192 Ariz. at 63, ¶ 27, 961 P.2d at 1011 (setting forth harmless error standard); *Rose*, 478 U.S. at 581, 106 S.Ct. at 3107 (same).

¶ 20 As to Shelly and Eddie, however, the conclusion differs. The State presented little evidence at trial of Dann's intent to kill these two victims. Indeed, although Dann made clear his intent to kill Andrew, there is little in the record indicating whether Dann knew Shelly or Eddie would be at Andrew's apartment. The only two pieces of evidence showing Dann's intent regarding Shelly and Eddie were (1) his placement of the muzzle softly against these victims' heads and (2) his statement to Tina that he killed Shelly because she laughed at him and killed Eddie to eliminate a witness. This evidence is not so overwhelming that we can conclude, beyond a reasonable doubt, that the error in the premeditation instruction did not affect the verdicts as to Shelly and Eddie.

¶ 21 When we consider the evidence of Dann's actual reflection regarding Shelly and Eddie in light of the court's instruction that *either* reflection or time would support a finding of first degree murder, and the prosecutor's closing argument, which stressed that point, we cannot say beyond a reasonable doubt that the flawed instruction did not affect the verdicts. Accordingly, we reverse the convictions for premeditated murder as to Shelly and Eddie.[4]

2. *Was the evidence presented at trial sufficient to support conviction for felony murder?*

 ¶ 22 The jury found Dann guilty of felony murder on all three murder charges.

**3.** The jury instruction was rendered less pivotal than it otherwise might have been by Dann's defense. Dann's defense was not that he killed Andrew in the heat of passion. He argued instead that he was not at the scene and did not commit the murders. Defense counsel's closing argument focused on reasonable doubt regarding Dann's guilt. He did not mention the court's instructions on premeditation or actual reflection.

**4.** We do not remand the case for retrial because Dann remains convicted of felony murder in the deaths of Shelly Parks and Eddie Payan. *See infra* ¶¶ 22–29.

The predicate offense for the felony murders was burglary, which, in turn, was predicated on an intent to commit aggravated assault. The State charged that Dann went to the apartment intending to shoot Andrew, which constitutes an aggravated assault. *See* A.R.S. § 13–1204. Dann asserts that the evidence showed that he entered Andrew's apartment intending to *murder* Andrew, not *assault* him; therefore, he argues, the only felony offense to support the burglary charge was murder, not aggravated assault. This results in bootstrapping, Dann maintains, because the State is saying that he committed felony murder because he entered the apartment intending to commit premeditated murder.

### a. Insufficient evidence.

 ¶ 23 The assumption underlying Dann's claim is that there was insufficient evidence to establish that he went to or remained in Andrew's apartment to commit aggravated assault. A court will find the evidence sufficient to support a conviction, however, if "substantial evidence," viewed in the light most favorable to sustaining the conviction, supports the verdict. *Guerra*, 161 Ariz. at 293, 778 P.2d at 1189. Substantial evidence is that which "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980).

¶ 24 The trial court gave instructions for felony murder with a predicate offense of burglary, and for burglary based on the intent to commit aggravated assault.[5] The

**5.** The judge instructed the jury regarding first degree murder as follows:

> A person commits first degree murder if some person, acting alone or with one or more other persons[,] commits or attempts to commit burglary and in the course of and in the furtherance of such offense, or immediate flight from such offense, such person, or another person, causes the death of another person. This type of first degree murder requires no specific mental state other than that which is required for the commission of the offense of burglary.

The court then instructed the jury on the elements of burglary and aggravated assault:

> The crime of burglary requires proof of the following two things:

instructions paralleled the Arizona statutes for each of the offenses, except that the burglary instruction discussed only the underlying offense of aggravated assault rather than informing the jury that burglary may be premised on the intent to commit any of the offenses listed in the statute or "any [other] felony." *See* A.R.S. §§ 13–1105(A) (2001) (first degree murder); 13–1203(A) (2001), – 1204(A)(1)–(3) (2001) (assault); 13–1507(A) (2001), –1508(A) (2001) (burglary).

### b. Evidence presented at trial.

¶ 25 Dann asserts that the State offered "[n]o suggestion he intended to commit aggravated assault." Instead, he maintains that the State directed its efforts at proving that he went to the apartment intending to kill Andrew.

¶ 26 The State, however, points to the following evidence supporting the aggravated assault predicate:

- Dann told Tina he needed a gun to retrieve some belongings from Andrew's apartment.

- Dann told George that Andrew had fired a gun at him, and he was going to "do something about it," "straighten out the problem," or "take care of the problem."

- Dann told George that he was going to shoot Andrew.

- After the murders, Dann confided to Tina that he had used his shoulder to force open Andrew's door and gain entry into the apartment.

- Dann later told Tina that he shot Shelly and Andrew because they laughed at him, indicating that he might not have

1. The defendant entered or remained unlawfully in or on a residential or a non-residential structure, and
2. The defendant did so with the intent to commit aggravated assault.
 The crime of felonious aggravated assault requires proof that:
1. The defendant intentionally, or knowingly, or recklessly caused any physical injury to another person while using a deadly weapon, or
2. The defendant intentionally placed another person in reasonable apprehension of an immediate physical injury while using or exhibiting a deadly weapon.
3. If a person enters or remains in or on a residential structure with the intent to com-

intended to shoot anyone when he went to Andrew's apartment.

¶ 27 From this evidence, argues the State, the jurors could have inferred that Dann unlawfully entered Andrew's apartment with the intent to commit an aggravated assault. We agree.

¶ 28 Moreover, the evidence that Dann went to the apartment intending to kill Andrew also provides substantial evidence that Dann entered the apartment brandishing a deadly weapon, intending to cause injury to Andrew or put him in fear of immediate physical injury. Such evidence also establishes the statutory elements of aggravated assault. *See* A.R.S. § 13–1204; *see also supra* n. 5 (aggravated assault instruction). We therefore conclude that sufficient evidence supports the jury's determination that Dann went to Andrew's apartment intending to commit aggravated assault.[6] Accordingly, we conclude that there was sufficient evidence to support the burglary and felony murder convictions.

### c. The merger doctrine.

¶ 29 Dann also argues that because he intended to murder Andrew rather than assault him, his conviction for the felony murder of Andrew violates the "merger doctrine" defined in *State v. Essman*, 98 Ariz. 228, 235, 403 P.2d 540, 545 (1965). Dann conceded, both in his brief and at oral argument, that felony murder predicated on burglary based on an intent to commit assault does not violate the merger doctrine, but contends that the State failed to present

mit felonious aggravated assault, that person is guilty of burglary.

6. Dann argues that the evidence viewed in the light most favorable to sustaining the verdict supports his position because it establishes that he intended to murder Andrew, not assault him. *See Gallegos*, 178 Ariz. at 9, 870 P.2d at 1105. Dann misapplies the principle, however. When looking at the evidence in the light most favorable to sustaining the verdict on the felony murder issue, we must look at the evidence supporting his conviction for burglary and felony murder, not the evidence supporting the premeditated murder verdict.

sufficient evidence to support a burglary conviction based on aggravated assault. Because we have found that there was sufficient evidence to support the jury's implicit aggravated assault finding, *see supra* sections 2a and 2b, Dann's merger argument fails.[7]

3. *Did the trial court err by precluding Dann's evidence of third-party culpability?*

¶ 30 Dann's principal defense was that, because Andrew took and sold drugs, some person involved in the notoriously violent drug scene might have killed him. While a defendant may attempt to show that a third party committed the crime with which the defendant is charged, the trial court retains discretion to exclude the evidence if it raises "only a possible ground of suspicion against another." *State v. Prion*, 203 Ariz. 157, 161, ¶ 21, 52 P.3d 189, 193 (2002). We review a trial court's decision not to admit evidence of third-party culpability for abuse of that discretion. *Id.*

a. *Evidence of third-party culpability.*

¶ 31 Dann sought to present evidence that the murders occurred as a result of Andrew's involvement in the drug trade. To support his theory that a third party committed the murders, Dann sought to introduce evidence that Andrew used and sold drugs and trafficked in stolen goods. He did introduce evidence of a police scanner between Andrew's legs, a shotgun leaning against the chair in which Andrew was shot, the surveillance equipment, the other weapons in the apartment, and the bicycles, stereos, and other assorted property. The only pieces of evidence directly linking Andrew to the drug trade, however, were a statement by Michael Parks, Andrew's brother, that Andrew used and dealt drugs in his apartment and evidence that the three victims had drugs in their systems at the time of death.

¶ 32 The prosecutor moved in limine to prevent the admission of these two pieces of direct evidence, asserting that any connection between drug use or dealing and the murders was both tenuous and speculative. The trial judge agreed that any connection between the drug trade and the murders was a "reach" and precluded the evidence.

¶ 33 We recently explained that, in determining the admissibility of third-party culpability evidence, a trial court should apply Rules 401, 402, and 403 of the Arizona Rules of Evidence. *See State v. Gibson*, 202 Ariz. 321, 323–24, ¶¶ 12–19, 44 P.3d 1001, 1003–04 (2002). The court first must determine the relevance of the proffered evidence, focusing in this inquiry on the effect "the evidence has upon the *defendant's* culpability." *Id.* at 324, ¶ 16, 44 P.3d at 1004 (emphasis in original). The evidence need only "*tend* to create a reasonable doubt as to the defendant's guilt" to be relevant. *Id.* If the trial court finds the proffered evidence relevant, then Rule 402 makes it admissible "unless 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* at 323, ¶ 13, 44 P.3d at 1003 (quoting Rule 403).

¶ 34 Dann argues that the trial judge failed to apply the appropriate legal test. The trial transcript makes clear, however, that, as *Gibson* directs, the judge attempted to discern the relevance of Andrew's alleged involvement with drugs to the murders at issue. For example, the judge asked Dann's counsel, "What is the relevance? What is the tie there between Mr. Parks, the deceased, being or using or abusing or selling drugs in this case?" The judge, therefore, understood the need and attempted to determine the relevance of the evidence offered.

¶ 35 Our review would be easier had the trial judge stated his conclusion in terms of

---

7. Moreover, Dann misapprehends the merger cases. Merger does not apply in cases in which the separate crime of burglary is alleged and established. *See Essman*, 98 Ariz. at 235–36, 403 P.2d at 545; *see also State v. Hankins*, 141 Ariz. 217, 221, 686 P.2d 740, 744 (1984); *State v. McGuire*, 131 Ariz. 93, 95–96, 638 P.2d 1339, 1341–42 (1981); *State v. Miller*, 110 Ariz. 489, 490–91, 520 P.2d 1113, 1114–15 (1974). *See generally* 2 Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW, § 14.5(g)(2) (2d ed.2003) (discussing aggravated battery occurring during course of burglary).

the applicable legal standard, rather than simply stating that the evidence was a "reach." Nonetheless, we are able to conclude that the trial judge would not have abused his discretion whether his conclusion that the proffered evidence was a "reach" meant that he believed that the evidence did not tend to create a "reasonable doubt as to the defendant's guilt," *see id.* at 324, ¶ 16, 44 P.3d at 1004, or whether he concluded that the evidence, while relevant, was so tenuously and speculatively connected to the case that it would have caused undue confusion of the issues or misled the jury, and thus failed the Rule 403 balancing test.

¶ 36 Neither conclusion is an abuse of discretion. While a defendant may attempt to show that another person is guilty of the crime with which he is charged, the trial court is not obligated to allow the defendant to offer mere suspicion or speculation regarding a class of persons. *See Prion,* 203 Ariz. at 161, ¶ 21, 52 P.3d at 193. Accordingly, whether the trial judge found the evidence irrelevant because it failed to create a reasonable doubt regarding Dann's guilt or because the tenuous and speculative nature of the evidence caused it to fail the Rule 403 test, the trial judge did not abuse his discretion by disallowing the evidence.

### b. *Evidence of the victims' drug use.*

¶ 37 Dann next contends that the trial judge's preclusion of the evidence of drugs in the victims' systems at the time of death impaired his right to present a third-party defense. The trial transcripts show, however, that Dann did not introduce this evidence as part of his third-party defense. Instead, Dann offered it to discredit the medical examiner's testimony regarding how quickly the victims expired and to counter a possible charge of kidnapping to support the felony murder charge. And it was successful for the latter point: The judge and the prosecutor agreed that the evidence presented at trial did not prove kidnapping.

¶ 38 Moreover, the judge allowed Dann's attorney to question the medical examiner, outside the presence of the jury, on whether the victims' drug use might have affected the time it took them to die. The examiner testified that the drugs probably did not make a substantial difference in the time it took the victims to die after receiving their wounds. Based on this testimony, the judge granted the prosecutor's motion to preclude the evidence.

¶ 39 The trial judge did not abuse his discretion in denying the evidence of Andrew's involvement in the drug trade or the presence of drugs in the victims at the time of death. *See State v. Robinson,* 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990) (stating standard of review). This evidence did not tend to point to a third person's culpability in the murders, had no tendency to establish the cause of the deaths, and may well have wasted time and confused the issues at trial. Accordingly, we affirm the trial court's decision to preclude the evidence of Andrew's involvement in the drug trade and the evidence of drugs in the victims' systems.

### 4. *trial court abuse its discretion in refusing to grant a mistrial after the introduction of inadmissible evidence?*

### a. *Facts regarding mistrial motion.*

¶ 40 During the State's case, Tina testified that Dann called her following the murders. Dann asked what he should do. She encouraged him to turn himself in, to which Dann replied, "That's not an option. *I can't go back to jail.*" Defense counsel promptly requested a mistrial.

¶ 41 Defense counsel complained that the witness's statement, which suggested that Dann had been in jail before, prejudiced Dann and violated Arizona Rule of Evidence 404(b), which prohibits evidence of other crimes to "prove the character of a person" as a way to show that he acted as he did because he was of bad character.

¶ 42 The trial judge asked counsel whether he should attempt to cure the error by instructing the jury that the witness misspoke or whether he should leave the matter alone. Defense counsel stated that he did not believe that mere silence would cure the problem. The judge therefore decided to instruct the jury that the witness had misspoken. Defense counsel urged the judge to tell the

jury instead that the witness "made a mistake" rather than "misspoke." The judge gave the following curative instruction to the jury:

> Ladies and gentlemen, I just want to clarify something for you real quick. The witness misspoke when she said that Mr. Dann said, "I'm not going back to jail on this." I just want to clarify that. That's not appropriate. It's not what happened. Okay, Counsel?

Defense counsel neither objected to the instruction nor asked the judge to further instruct the jury to disregard the improper statement.

#### b. Law regarding mistrial motion.

[25–27] ¶ 43 Dann urges that a mistrial is the appropriate remedy for the admission of Tina's statement. A declaration of a mistrial, however, is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson,* 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). We will not overturn a trial judge's decision to deny a motion for mistrial unless we find an abuse of discretion. *State v. Jones,* 197 Ariz. 290, 304, ¶ 32, 4 P.3d 345, 359 (2000). And because the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination. *Id.*

¶ 44 The claimed error at issue was the admission at trial of evidence suggesting that Dann had previously been incarcerated. Although evidence of prior crimes generally is not admissible, *see* Ariz. R. Evid. 404(b), courts "will not reverse a conviction based on the erroneous admission of evidence" unless there is a " 'reasonable probability' that the verdict would have been different had the evidence not been admitted." *State v. Hoskins,* 199 Ariz. 127, 142–43, ¶ 57, 14 P.3d 997, 1012–13 (2000) (quoting *State v. Atwood,* 171 Ariz. 576, 639, 832 P.2d 593, 656 (1992)).

¶ 45 In *Hoskins,* this court analyzed a situation similar to the one now before us. Hoskins requested a mistrial because a witness volunteered testimony regarding the defendant's previous arrest. *Id.* at 142, ¶ 54, 14 P.3d 997, 14 P.3d at 1012. The testimony violated the prosecutor's admonition to the witness not to make the statement. *Id.* ¶ 56. In affirming the denial of the motion for a mistrial, this court noted that while admission of the evidence constituted error, because the record contained "strong circumstantial evidence" of Hoskins' guilt, no reasonable probability existed "that the verdict was affected by his prior arrest statement." *Id.* at 143, ¶ 58, 14 P.3d at 1013. We therefore concluded that the trial court had not abused its discretion in denying the mistrial motion.

¶ 46 The situation is similar here. In apparent contravention of the prosecutor's instructions, Tina made an improper statement. The testimony constituted error. The trial judge viewed the improper statement in the context of the evidence in the case as a whole, assessed its effect on the jury, and, in light of all the circumstances, determined that a limiting instruction would cure the error. Defense counsel did not object to the instruction or solicit further guidance for the jury, and we assume the jurors followed the court's instruction. *See State v. Prince,* 204 Ariz. 156, 158, ¶ 9, 61 P.3d 450, 452 (2003) ("We ... presume that jurors follow instructions."). This, combined with the overwhelming evidence against Dann, rendered the error harmless. Finding no abuse of discretion, we affirm the trial court's decision to deny the motion for mistrial.[8]

#### c. The curative instruction.

¶ 47 Dann argues that the trial court's curative instruction improperly commented on the evidence and failed to cure the error. The State counters that Dann waived

---

8. Dann alleges that the denial of the mistrial motion violated his right to due process under the United States and Arizona Constitutions. *See* U.S. Const. amends. V, XIV; Ariz. Const. art. 2, §§ 4, 24. Dann did not develop his argument, and we do not find that the error rendered the trial so fundamentally unfair that it violated Dann's due process rights. *See Jammal v. Van de Kamp,* 926 F.2d 918 (9th Cir.1991); *see also State v. Bolton,* 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (failure to develop legal argument waives argument on appeal).

the argument by not making a timely objection to the instruction on these grounds. However, Dann did object to the instruction, first by urging that no instruction should be given at all, and then by proposing alternative wording. *Cf. State v. Fulminante,* 193 Ariz. 485, 503, ¶ 64, 975 P.2d 75, 93 (1999) ("An objection is sufficiently made if it provides the judge with an opportunity to provide a remedy."). His proposal sufficiently adverted to the objection he now raises to allow this court to review it.

¶ 48 On appeal, Dann elaborates that the curative instruction "highlighted the testimony rather than curing it." That is a risk inherent in curative instructions. Nonetheless, we allow such curative instructions and presume that juries follow them. *Prince,* 204 Ariz. at 158, ¶ 9, 61 P.3d at 452. We will not reverse on this ground.

¶ 49 Dann also contends that by instructing the jury that what the witness said was "not what happened," that she had "misspoken," and that her statement was "inappropriate," the trial judge commented on the evidence.

¶ 50 Article 6, Section 27 of the Arizona Constitution prohibits judges from commenting upon evidence presented at trial. A judge violates this prohibition by expressing "an opinion as to what the evidence proves," in a way that interferes "with the jury's independent evaluation of that evidence." *Rodriguez,* 192 Ariz. at 63, ¶ 29, 961 P.2d at 1011. However, reversal is not required if "we can conclude, beyond a reasonable doubt, that the error had no influence on the verdict." *Id.* ¶ 27, 961 P.2d 1006.

¶ 51 We agree that the trial judge's statements constitute comments on the evidence. He told the jury that the witness misspoke and what she said had happened was not, in fact, what had happened. However, we conclude that any comment favored Dann and, moreover, because the evidence presented at trial overwhelmingly established Dann's guilt, we conclude, beyond a reasonable doubt, that the error had no influence on the verdict. *See id.*

5. *Did the trial court violate Dann's right to be present at all stages of the case?*

¶ 52 Dann complains that he was denied his constitutional right to be present at all stages of the trial. Specifically, he complains that he was not present at two types of proceedings: (1) a series of pretrial conferences held between May 27, 1999 and September 7, 2001, and (2) a series of sidebar and in-chambers conferences held during jury selection and trial. Dann raises these issues for the first time on appeal.[9]

¶ 53 Defendants have the right, rooted in the Sixth Amendment, "to be present at every stage of the trial." Ariz. R.Crim. P. 19.2; *see also United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985); *accord State v. Garcia–Contreras,* 191 Ariz. 144, 146, ¶ 8, 953 P.2d 536, 538 (1998). However, this right "applies only to those proceedings in open court 'whenever [a defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *State v. Christensen,* 129 Ariz. 32, 38, 628 P.2d 580, 586 (1981) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), *overruled in part by Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). Thus, the right does not "extend to in-chambers pretrial conferences, ... to brief bench conferences with attorneys conducted outside the defendant's hearing, and to various other conferences characterized as relating only to the resolution of questions of law." 5 Wayne R. LaFave, Jerold H. Isreal, & Nancy J. King, CRIMINAL PROCEDURE § 24.2(a) (2d ed.1999) (footnotes omitted). When reviewing a defendant's absence from preliminary hearings, the court should examine the rec-

---

9. At one point in the pretrial proceedings, Dann's counsel said that Dann would no longer waive his presence at pretrial conferences. *See infra* ¶ 57. He did not, however, make further objections or develop his "absence" argument. In his brief, Dann asserts that he "repeatedly insisted on being present at 'all matters.'" To the contrary, the record shows that Dann asserted his right only twice in two and one-half years, first for a hearing on November 3, 1999, and, second, on May 11, 2000.

ord as a whole and determine "whether [the] accused suffered any damage by reason of his absence." 23A C.J.S. *Criminal Law* § 1162(b) (1989); *see also Snyder,* 291 U.S. at 115, 54 S.Ct. at 336 (examining a confrontation violation "in light of the whole record").

¶ 54 Furthermore, a defendant may waive his right to be present. Ariz. R.Crim. P. 9.1; *State v. Bohn,* 116 Ariz. 500, 503, 570 P.2d 187, 190 (1977). The general rule is that, while a defendant has a right to be present at all phases of the trial, failure to object to exclusion from a conference, when the defendant is present and able to do so, waives the error:

> [W]aiver may be presumed where defendant was present in court and did not make any effort to attend the bench or in-chambers examination when counsel left the defense table to participate. The failure of defendant to express an interest in attending may be taken as an intentional relinquishment of the right to be present, at least where the court in no way suggested that defendant could not accompany counsel.

LaFave et al., *supra* ¶ 53, at § 24.2(b) (footnotes omitted).

¶ 55 Thus, Dann's failure to request to attend a hearing or to object to his absence from the various proceedings of which he now complains waived his right to be present, unless there was fundamental error. *See State v. Muniz–Caudillo,* 185 Ariz. 261, 262, 914 P.2d 1353, 1354 (1996); *Gagnon,* 470 U.S. at 528–29, 105 S.Ct. at 1485–86 (concluding that the Sixth Amendment right to be present is waived by failing to object or to request to attend an *in camera* hearing). Error is fundamental if it is "clear, egregious, and curable only via a new trial" and, viewed in the context of the entire trial, is "of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial." *State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991) (internal quotation omitted).

¶ 56 In summary, before we will require a new trial because of Dann's absence from any proceedings, we must determine that Dann adequately asserted the right below or, if he did not, that any resultant error was fundamental. If the error was adequately preserved, Dann bears the burden of showing first that the missed proceeding was of the type he has a constitutional right to attend and, second, that his absence deprived him of a substantial right to defend himself and resulted in actual prejudice.

¶ 57 Dann first asserts that his right to be present was violated by his absence from pretrial conferences that took place on May 27, 1999, July 21, 1999, January 1, 2000, March 6, 2000, and May 11, 2000.[10] During the May 11, 2000 hearing, Dann's attorney stated that while Dann had previously waived his presence at telephonic conferences, he no longer wished to do so and wanted to be "present at all matters." This was the first time Dann's attorney asserted Dann's right to be present at all hearings. We therefore conclude that, absent fundamental error, Dann waived his presence at the May 11, 2000 conference and all that occurred before that date. And we find no fundamental error because Dann has not shown either that he suffered any prejudice as a result of his absence from the pretrial proceedings that occurred before May 11, 2000 or that his absences rendered the trial unfair.

¶ 58 Following the May 11 request, Dann was present at preliminary proceedings on May 25, 2000, June 20, 2000, June 28, 2000, July 18, 2000, September 15, 2000, October 13, 2000, November 13, 2000, November 21, 2000, January 2, 2001, January 23, 2001, March 6, 2001, April 10, 2001, June 19, 2001, August 14, 2001, and August 17, 2001.

¶ 59 Dann was not present for three telephonic hearings on February 7, 2001, July 17, 2001, and September 7, 2001, all of which occurred after he asserted his right to be present, although neither he nor his counsel objected to his absence from these three hearings. Assuming without deciding that Dann's May 11, 2000 assertion of

---

10. All conferences were telephonic, except the July 21, 1999 conference, which was held in person in Phoenix. The distinction between tele-phonic and in-person conferences does not affect the analysis.

his right to be present preserved his objection to his absence from these three hearings, Dann must still show that he had a constitutional right to attend these hearings, *see Christensen*, 129 Ariz. at 38, 628 P.2d at 586, and that his absence deprived him of a substantial right to defend himself and resulted in actual prejudice.

¶ 60 Preliminarily, we observe that these hearings were not trial proceedings in open court, nor do they appear to be proceedings that affected "the fullness of [Dann's] opportunity to defend against the charge[s]." *Id.* at 38, 628 P.2d at 586. The February 7, 2001 telephonic hearing between Judge Newton of the Coconino County Superior Court and an attorney from the Maricopa County Legal Defender's Office concerned that office's asserted conflict of interest.[11] Judge Newton allowed the Legal Defender's Office to withdraw from the case. Not wanting Dann "to feel that if he wants some input on his Attorney, that I would not consider that," Judge Newton gave Dann ten days to respond and request reconsideration of the court's decision. Not only did Dann fail to request reconsideration, at a hearing a month later, he expressed his pleasure with his newly appointed counsel. Dann has not shown any prejudice stemming from his absence and his failure to act on the court's invitation to request reconsideration waives any objection to his absence.

 ¶ 61 The July 17, 2001 and September 7, 2001 telephonic conferences concerned procedural issues relating to the upcoming trial, such as the use of jury questionnaires, whether to voir dire jurors individually, when jury polling would start, how many potential jurors to call, how the jurors would be seated, and who would send the juror summons. Dann contends that the parties discussed a motion for jury determination of aggravating factors

at the July 17 conference, but the record reflects that the only discussion of that motion pertained to the prosecutor's failure to respond to it. Accordingly, because the conferences involved entirely procedural matters and Dann has not shown that he was entitled to attend or that he could have contributed to his defense had he been present, we do not find that Dann's right to be present was violated. Although the better practice would have been to allow him to be present, no fundamental error occurred as a result of Dann's absence from the conferences on February 7, 2001, July 17, 2001, and September 7, 2001. Finally, we conclude that by failing to object or seek reconsideration, Dann waived any error that may have been attributable to his absence.

 ¶ 62 The second group of proceedings of which Dann complains consisted of a procedural conference following the close of evidence and a side-bar and three in-chambers conferences that occurred during jury selection and trial. Dann did not participate in the side-bar [12] concerning his attorney's motion for a mistrial following Tina's testimony that Dann had said he did not want to go back to jail. Dann asserts that, at the side-bar, the trial judge "[told] Ms. Pace–Morell how she was to change her testimony." The record does not support this characterization of the conversation. Rather, the judge told Tina why he had to instruct the jury concerning her statement and told her not to contradict the instruction. The caution proved unnecessary, however, as Tina's statement and the objection regarding it were never again mentioned at trial after the curative instruction was given.

¶ 63 Dann has not shown that he suffered any actual prejudice as a result of his absence from this side-bar conference. More-

---

11. Judge Newton conducted the conference at Judge Coker's request. Therefore, none of the parties present at this proceeding had been present when Dann asserted his right to attend all future proceedings. The hearing occurred because, at Dann's request, Judge Coker relieved the Maricopa County Public Defender's Office as Dann's counsel and appointed the Maricopa County Legal Defender's Office to defend him. Before undertaking the case, the Maricopa Coun-

ty Legal Defender's Office advised the court of a potential conflict of interest. The February 7 conference resulted from that notice.

12. At oral argument, Appellant argued that the side-bar was a conference held outside the presence of the jury in the cloak room. Because the distinction is not dispositive of the issue, we will rely on the record and term it a side-bar.

over, although Dann was present in the courtroom and knew the conference was taking place, he did not ask to join the side-bar discussion, thereby waiving his presence at it. *Gendron,* 168 Ariz. at 154, 812 P.2d at 627 (waiver); *see also* LaFave, *supra* ¶ 53, at § 24.2(b).

¶ 64 On the final day of trial and before closing arguments, counsel met in chambers with the judge. During the ensuing discussion, Dann's attorney opposed the felony murder instruction and the form of verdict and moved for a judgment of acquittal. Dann complains that the motion and objection occurred out of his presence. The record shows, however, that while the initial discussion of the felony murder instruction occurred in chambers, that argument was repeated in the courtroom in Dann's presence. As to the form of verdict, the judge accepted Dann's attorney's suggestion regarding the form to use, and Dann has not argued on appeal that he would have requested a different form. Thus Dann has shown no prejudice attributable to his absence from this discussion. Nor did he, either personally or through his attorney, request to attend those proceedings. Finally, contrary to Dann's contention, the record shows that Dann was present in the courtroom when his attorney argued for a judgment of acquittal.

¶ 65 Dann also complains of his absence from two in-chambers conferences, one with a potential juror during voir dire and the other with an empaneled juror. The first conference was requested by a potential juror who told the court the following: (1) that he had had professional contacts with Maricopa County Attorney Rick Romley thirteen years earlier, but had not had any contact since and had never contributed to Romley's political campaigns; (2) that he had been charged with felony violations, but acquitted, twenty years earlier; (3) that he knew that Dann's father was a superior court judge; and (4) that his granddaughter had served a prison sentence. The potential juror nonetheless assured the court that he could be fair and impartial. Neither counsel moved to strike the juror for cause, although defense counsel later used a peremptory challenge to remove him. We will not reverse on this issue because Dann has not shown how his presence might have affected his counsel's decision whether to seek to remove the potential juror for cause. Furthermore, Dann waived the issue because he was present in the courtroom during the jury selection proceedings and could have raised the issue of his absence from the conference, and the error, if any, could have been corrected.

¶ 66 Dann next objects to his absence from the September 24, 2001 in-chambers discussion with an empaneled juror. That juror had attended a movie over the weekend with his sister, his sister's friend, and the friend's two children. Unbeknownst to the juror, Eddie Payan, one of the murder victims, was the children's father. During the in-chambers discussion, which Dann neither objected to nor asked to join, the judge asked whether the juror knew of any connection between Dann's case and the children, or the children's mother. He stated that he did not, and the record does not reflect that the juror ever became aware of the connection. As a precaution, however, the court designated the juror as an alternate and dismissed him before deliberations. Dann has failed to show any fundamental error that resulted from his absence in chambers or any impact his presence would have had on the defense of his case. Furthermore, Dann's failure to request to attend the conference and his counsel's failure to object to Dann's absence while the error could have been corrected waives any error.

¶ 67 Dann relies on *Garcia–Contreras,* 191 Ariz. at 148, ¶ 16, 953 P.2d at 540, to support his argument that his exclusion from the in-chambers discussions with the two jurors should result in reversal. In *Garcia–Contreras,* the court reversed the defendant's conviction because the defendant involuntarily missed the entire jury selection process. *Id.* at 148–49, ¶¶ 17–22, 953 P.2d at 540–41. In so ruling, however, the court noted that error may be found harmless if the defendant's absence has been only " 'from some minor portion of the selection process,' rather than from the whole thing." *Id.* at 148, ¶ 17, 953 P.2d at 540 (quoting *State v. Ayers,* 133 Ariz. 570, 571, 653 P.2d 27, 28 (App.1982)).

¶ 68 In the case before us, Dann was present for the selection process and able to see the jurors and assist his counsel. Dann missed only a minor portion of the questioning of one juror and an in-chambers discussion with an empaneled, but non-deliberating juror who had inadvertent contact with Eddie Payan's children. He was not denied the right to attend the entire jury selection process, as was Garcia–Contreras. The missed proceedings were minor events during which Dann's counsel was present to represent him. A defendant does not have a constitutional "right to be personally present in the court's chambers to discuss how to handle" jury issues. *Christensen,* 129 Ariz. at 38, 628 P.2d at 586. Nor may he sit on his hands, fail to assert his desire to be present at an in-chambers discussion, then claim fundamental error based on his absence from that discussion.

¶ 69 Dann directs the court's attention to decisions from two jurisdictions that afford defendants a fundamental right to be present at all voir dire proceedings, including side-bar and in-chambers conferences. *See State v. Bird,* 308 Mont. 75, 43 P.3d 266 (Mont.2002); *People v. Tolliver,* 224 A.D.2d 924, 638 N.Y.S.2d 268 (N.Y.App.Div.1996). In Arizona, however, the right to be present "applies only to those proceedings in open court 'whenever [a defendant's] presence has a relation, reasonably substantial, to the fullness of the opportunity to defend against the charge.'" *Christensen,* 129 Ariz. at 38, 628 P.2d at 586 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332). Dann has not argued that we should expand that right. Thus the cases he cites are inapposite.

¶ 70 Dann also cites two cases in which the trial judge conducted voir dire outside the presence of the defendants and their attorneys. *Eaves v. State,* 730 So.2d 717 (Fla. Dist.Ct.App.1999); *State v. Harris,* 229 Wis.2d 832, 601 N.W.2d 682 (1999). These cases are inapposite because Dann was present and represented by counsel at voir dire.

¶ 71 Finally, Dann failed to object to his exclusion from specific proceedings during the two and one-half years the case wound its way through the system. Had he objected, any error could have been cured. A defendant cannot sit idly on his rights. He must make his objections known so that the perceived error can be corrected. Failure to bring error to the court's attention waives the error and removes the issue as a ground on which a new trial can be predicated.

¶ 72 We are concerned, however, that Dann's desire to be present at all proceedings was occasionally forgotten. A trial judge should make every effort to honor a defendant's request to attend all proceedings, especially in a capital case. *See State v. Bible,* 175 Ariz. 549, 609, 858 P.2d 1152, 1212 (1993) (stating that in capital cases we must "continue to take[ ] the extra step—indeed walk the extra mile—to ensure fairness and accuracy"). We understand the difficulties that may be involved in securing a defendant's presence. But the better practice, once a defendant has asserted the right to be present, is to take all reasonable measures to ensure that the right is protected.

¶ 73 Still, we reject Dann's argument that he deserves a new trial because his constitutional rights were violated by his absence from the proceedings at issue here. Dann has failed to show how his presence at any of the procedural hearings would have affected his ability to defend against the charges or how he was prejudiced by the absences. Moreover, his failure to object to any of the absences in a timely manner prevented the trial judge from curing any potential error. Accordingly, even if Dann's absence from any of the proceedings were error, the error was waived. Certainly no error was fundamental.

6. *Is the Portillo instruction on reasonable doubt constitutionally deficient?*

¶ 74 Dann argues that the reasonable doubt instruction approved in *State v. Portillo,* 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995), is unconstitutional because it lowers the state's burden of proof to a clear and convincing standard, shifts the burden of proof to the defendant, and misinforms the jury that the state need not overcome every doubt. This court has rejected these arguments and reiterated its "preference for this instruction." *State v. Van Adams,* 194 Ariz.

**576**

408, 418, ¶¶ 29–30, 984 P.2d 16, 26 (1999). We reaffirm our previous holding on this issue and do not address the issue further.

## C. Sentencing Issues

¶ 75 In *Ring v. Arizona,* the Supreme Court held that Arizona's capital sentencing scheme violated the defendant's Sixth Amendment right to a jury trial. 536 U.S. 584, 609, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002) (*Ring II*). In doing so, the Court held that defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589, 122 S.Ct. at 2432. The Court remanded for further proceedings consistent with its decision. *Id.* at 609, 122 S.Ct. at 2443. On remand, we consolidated all cases, including Dann's, in which the death penalty had been imposed and the mandate had not yet issued from this court, and ruled that we would order supplemental briefing on sentencing issues affected by *Ring II* after issuance of our decision in *Ring III,* 204 Ariz. at 534, 65 P.3d at 915. Because *Ring III* has been issued, by separate order we have directed the parties to submit supplemental briefing in accordance with that opinion. We will address sentencing issues in a supplemental opinion.

## CONCLUSION

¶ 76 For the foregoing reasons, we affirm Dann's convictions for the first degree felony murders of Andrew Parks, Shelly Parks, and Eddie Payan pursuant to A.R.S. § 13–1105(A)(2), affirm Dann's conviction for the first degree premeditated murder of Andrew Parks pursuant to A.R.S. § 13–1105(A)(1), and affirm Dann's conviction and sentence for first degree burglary. We reverse Dann's convictions for the first degree premeditated murders of Shelly Parks and Eddie Payan pursuant to A.R.S. § 13–1105(A)(1), without prejudice to the State's right to retry Dann on those counts.

* The Honorable Andrew D. Hurwitz recused himself. Pursuant to Article VI, Section 3 of the Arizona Constitution, the Honorable William F.

CONCURRING: CHARLES E. JONES, Chief Justice, RUTH V. McGREGOR, Vice Chief Justice, MICHAEL D. RYAN, Justice, and WILLIAM F. GARBARINO, Judge.*