NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARK RUSSELL HENDERSON, *Appellant.*

No. 1 CA-CR 16-0467
FILED 7-18-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-1343412-002
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Michael J. Dew, Phoenix
By Michael J. Dew
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Samuel A. Thumma joined.

_____

**H O W E**, Judge:

¶1        Mark Russell Henderson appeals his conviction and sentence for one count of forgery. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In July 2015, Henderson and another man walked into a Wells Fargo bank to each cash a check. Because Henderson did not have an account with the bank, the bank required him to sign in with a personal banker to verify the check's authenticity, as was routine for all customers who did not bank with Wells Fargo. Henderson handed the banker the check, which stated was from "Destiny Trucking LLC," to Henderson for $793.99. The check's memo line simply stated "Cargo Driver/AZ to PA."

¶3        As part of her verification process, the banker looked at the last three months' worth of checks issued by Destiny Trucking. The banker noticed that Henderson's check was different than those that the company had previously issued. For example, the check was printed on different stock than past checks, had a different signature, and was typed instead of handwritten. Additionally, Henderson's check lacked an image of a truck which was present on the other checks that Destiny Trucking issued.

¶4        Because Henderson's check was so different, the banker told Henderson that she needed to take it to her manager for a second look. Henderson responded that the company had told him that he was going to have a hard time verifying it. Upon receiving the check from the banker, the manager called the trucking company to ask whether it authorized the check. The company's sole owner, who had the sole hiring and accounting authority, stated that he did not authorize the check and that he did not know Henderson or hire anyone to drive from Arizona to Pennsylvania. Accordingly, the manager called the police.

¶5        By the time the officers had arrived, Henderson had moved to the teller line. The officers, who had received a description of Henderson and what he was wearing, saw him in the line and immediately called him

over. Henderson obliged, getting out of line, walking straight to one of the officers, turning around, and putting his hands behind his back. The officers then put Henderson in the back of a police car, where he told an officer that he was at the bank to tend to "business matters." The State charged Henderson with one count of forgery. The State alleged that Henderson had one historical prior conviction. The State also alleged several aggravating circumstances.

¶6            At his jury trial, from which Henderson absented himself after jury selection, the State called one of the arresting officers during its case-in-chief. The State asked the officer what Henderson's demeanor was after placing him in custody and when interviewing him. The officer responded that Henderson "seemed defeated, like he admitted that he—he didn't want to go to jail and he knew he messed up." At a sidebar on an unrelated subject held not long after this testimony, Henderson told the court that he wanted to question the officer about the statement that he said Henderson made and its relation to Henderson's invocation of his *Miranda*[1] rights.

¶7            Out of the jury's presence, the officer, in response to a question from Henderson, admitted that at some point during the investigation at the bank, he found that Henderson had marijuana on him. Henderson asked the officer whether Henderson made the statement about messing up and not wanting to go to jail before or after the officer found Henderson's marijuana. After initially saying that he was unsure, the officer stated that he believed that Henderson said it "instantaneously" after the marijuana was found. The officer explained that Henderson invoked his *Miranda* rights after all of that had occurred, so he then ended the interview. On cross-examination, however, the officer stated that Henderson did not make the statements immediately after the marijuana was found, but a minute or two after. He further testified that he understood Henderson's statements as "I'm going to jail no matter what. You know, you don't need me to say anything reference [sic] the bank incident. I could go to jail on that bag alone." The officer stated that he did not interpret Henderson's comment to relate only to the marijuana, but to both offenses.

¶8            Based on this testimony, the trial court concluded that the officer had not intentionally misled the jury regarding the context of Henderson's statements, but just understood the statements to refer generally to his wrongdoing. Nevertheless, the court stated that it would instruct the jury to disregard the statements that the officer said Henderson

---

[1]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

made. The court believed that the instruction would adequately "cure[] any misconception that the jury might have about the strength of those statements, in terms of [the] charge that he's facing here in this case." The court stated that this was especially so because the jury did not know that forgery and possession of marijuana were separate charges, so it could not make the determination of which incident the statements referred to if the court allowed the testimony to stand.

¶9        Henderson, however, then moved for mistrial, arguing that the officer's testimony was misleading because the statement referred to the marijuana, not the forgery charge. Henderson further stated that the curative instruction would not allow him to cross-examine the officer about the statement and that the testimony was prejudicial. In response, the State argued that the curative instruction would suffice if the court believed that the testimony was misleading. The court stood by its ruling, concluding that the curative instruction to disregard the testimony sufficiently ameliorated any prejudice that the testimony might have caused and, at Henderson's request, agreed to specifically repeat the statement that the jury should disregard when giving the instruction.

¶10        Later, during redirect examination—and in response to questioning on cross-examination about whether Henderson ran away or left the building during this time—the State asked what Henderson's demeanor was when the officers arrived. Consistent with the police body camera video footage presented to the jury, the officer stated that Henderson looked down, walked toward the officer, turned around, and put his hands behind his back. The State then asked if that behavior was typical for someone being arrested, to which the officer replied, "No, it is not. Well, it is if they are guilty and they have nowhere to go. The gig is up. Yes, they are giving up. Knowing they messed up and committed a crime, it is typical." At the end of the State's examination, the court took questions from the jury.

¶11        One juror asked whether Henderson asked the officer any questions, "like why is he being taken into custody?" The officer responded that he did not, nor did he protest the arrest. Another juror asked if Henderson ever admitted to committing the forgery when the officer interviewed him. The officer responded that he did not, and that he "only asked a couple of questions before he asked for a lawyer." Henderson immediately objected and moved for a mistrial based on the officer's mention of Henderson's invocation, arguing that it caused bias. The State agreed that the testimony should be stricken, but argued that a mistrial was unnecessary. The trial court denied Henderson's motion for mistrial,

concluding that it did not believe that the statements drew attention to the invocation of Henderson's rights.

¶12        After the State rested its case-in-chief, the court, the State, and Henderson discussed the final jury instructions. Henderson then asked the court to add a curative instruction requiring the jury to disregard the officer's testimony regarding Henderson's invocation, or in the alternative, to declare a mistrial. The court stated that it would review the testimony and decide whether a curative instruction was necessary. Henderson also wanted the court to instruct the State to not mention the officer's statement that being quiet and turning around to be arrested is typical behavior of guilty people. Regarding that comment, Henderson stated that a curative instruction to the jury was not needed. The State agreed that a curative jury instruction was unnecessary for that comment and agreed to not mention it in its closing argument.

¶13        Before the parties made their closing statements, Henderson again moved for mistrial based on the officer's mentioning of Henderson's invocation. He argued that the totality of the circumstances—namely, the instances from which he previously moved for mistrial and the officer's statements about the typical behavior of guilty people—warranted a mistrial because of the bias and prejudice Henderson suffered. Alternatively, Henderson asked for an express curative instruction on the comments that the jury could not consider as evidence. But the trial court again denied Henderson's motion, stating that the statement, alone or together with the officer's other statements, did not affect the proceedings such that Henderson could not receive a fair trial. The court did, however, agree to give the curative instruction to the jury that it could not consider the statement and advising that because Henderson was entitled to an attorney, his request for one could not be used to determine guilt or innocence.

¶14        After deliberating, the jury convicted Henderson and found that the State had proved two aggravating circumstances. The trial court sentenced Henderson to a presumptive term of 4.5 years' imprisonment with 108 days' pre-sentence incarceration credit. Henderson timely appealed.

## DISCUSSION

¶15        Henderson argues that the trial court erred by failing to grant a mistrial. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *State v. Hardy*, 230 Ariz. 281, 292 ¶ 52 (2012). In doing

so, we bear in mind that a mistrial is the "most dramatic" sanction that should be granted only when it appears that justice cannot be done unless the court discharges the jury and grants a new trial. *State v. Herrera*, 203 Ariz. 131, 134 ¶ 4 (App. 2002). In considering whether to grant a mistrial based on a witness's testimony, the trial court must (1) determine whether the testimony called to the jury's attention matters that it would not be justified in considering in reaching its verdict and (2) consider, under the case's circumstances, the probability that the testimony influenced the jurors. *State v. Lamar*, 205 Ariz. 431, 439 ¶ 40 (2003). Because the trial court is in the best position to determine whether the alleged error actually affected the outcome of the trial, we defer to it and will not reverse its ruling unless the error was clearly injurious. *State v. Jones*, 197 Ariz. 290, 304 ¶ 32 (2000); *State v. Williams*, 209 Ariz. 228, 239 ¶ 47 (App. 2004).

**¶16** Henderson argues first that the trial court erred by not granting a mistrial when the officer impermissibly commented on Henderson's post-arrest, pre-*Miranda* silence by "volunteering" testimony on Henderson's quiet demeanor upon arrest—behavior that he believed was typical of a guilty person. He contends that commenting on Henderson's pre-*Miranda* silence violated his Fifth Amendment rights. The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." Use of a defendant's silence as evidence of guilt violates his Fifth Amendment rights. *State v. VanWinkle*, 229 Ariz. 233, 236–37 ¶ 15 (2012). A defendant's right to due process may also be violated when a witness introduces a statement that the defendant asserted his right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 617 (1976).

**¶17** First, Henderson has not shown that the trial court abused its discretion by denying Henderson's motion for mistrial after the officer's first statement that Henderson stated that he had "messed up." Henderson did not initially object to the testimony. After Henderson later requested and conducted a voir dire, the trial court concluded that allowing the jury to consider the statement without knowing about the separate marijuana charge would be misleading. However, it believed that a curative instruction would sufficiently ameliorate any prejudicial influence the statement could have on any jury "misconception . . . about the strength of the statements"—a determination that it was in the best position to make. *See Jones*, 197 Ariz. at 304 ¶ 32. At Henderson's request, the court agreed to specifically repeat in its instruction the specific phrase that the jury was to disregard and not consider as evidence. We presume that juries follow the court's instructions. *State v. Dann*, 205 Ariz. 557, 570 ¶ 46 (2003). Thus, the court did not abuse its discretion. *See Lamar*, 205 Ariz. at 439 ¶ 43

(concluding that the curative instruction sufficiently overcame any probability that the jury would consider the officer's improper testimony).

¶18　　　Second, Henderson has not shown that the court abused its discretion by not granting a mistrial after the officer testified about Henderson's quiet demeanor when he was being arrested because the testimony did not call matters to the jury's attention that it would not be justified in considering when reaching its verdict. The officer described Henderson's demeanor, not on his own accord, but in response to a redirect question about Henderson's demeanor when being arrested. The officer's testimony was neither a comment on Henderson's silence or evidence of his guilt, but described Henderson's conduct during the arrest. *Cf. VanWinkle*, 229 Ariz. at 234 ¶ 4 (explaining that the prosecutor introduced evidence of defendant's silence upon being accused of the crime by someone at the crime scene and "argued to the jury that this was a tacit admission of guilt"). Looking at the case's circumstances as a whole, the State introduced and the jury saw body camera video footage of Henderson's arrest, which clearly shows Henderson getting out of the teller line when called, walking straight to the officer, turning around, and placing his hands behind his back without saying anything. The officer did not testify to anything different from or beyond what was clearly visible in the video. Thus, the jury could still consider the evidence of and judge Henderson's demeanor and conduct from the video even if the officer had not testified about it and the trial court did not err by not granting a mistrial.

¶19　　　Third, the officer's subsequent statement about Henderson's behavior as being consistent with that of a guilty person who knew they had "messed up" also did not mandate a mistrial. A witness's statement about belief in a defendant's guilt does not necessarily warrant a mistrial. *State v. Moody*, 208 Ariz. 424, 456 ¶ 126 (2004). Here, the officer's testimony described generally behavior typical of someone who has committed a crime; he did not specifically state that Henderson acted or said he was guilty. In fact, Henderson did not move for mistrial when the officer made this statement, nor did he request a curative instruction. Instead, Henderson only asked that the prosecutor agree to not mention that comment in his closing statement. Accordingly, the trial court did not err.

¶20　　　To the extent that Henderson argues that the officer's first statement that Henderson said he "messed up," the officer's testimony about Henderson's quiet demeanor when he was arrested, and opinion that it was consistent with the behavior of a guilty person who knows he has "messed up" constitutes cumulative error, his argument fails. Except for in cases of prosecutorial misconduct, Arizona does not recognize cumulative

error because "something that is not prejudicial error in and of itself does not become such error when coupled with something else that is not prejudicial error." *State v. Roscoe*, 184 Ariz. 484, 497 (1996). Because none of the three instances above in and of itself constitutes prejudicial error, the three together do not constitute cumulative prejudicial error. Regardless, Henderson has failed to sufficiently develop this argument. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (requiring each contention raised on appeal to include citations with authorities, parts of the record relied on, and the reasons for the argument).

**¶21** Henderson next argues that the court erred by denying his motion for mistrial after the officer stated that he only asked Henderson a few questions before he invoked his *Miranda* rights. In denying Henderson's motion for mistrial, the court viewed the statement in the context of the case as a whole and determined that the officer's statements did not draw attention to Henderson's invocation of his rights. Because the trial court is in the best position to make this finding, we defer to its conclusion. Despite its finding, the court gave a detailed jury instruction to disregard the statement because Henderson had a right to speak to a lawyer. The court explained that any person is entitled to have an attorney's help and that evidence of getting that help could not be used to determine guilt or innocence. We presume that the jury followed the trial court's instruction. *Dann*, 205 Ariz. at 570 ¶ 46. Thus, the court did not abuse its discretion by denying Henderson's motion for mistrial.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.



8