NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICK JUAN JARAMILLO, *Appellant.*

No. 1 CA-CR 13-0880
FILED 11-20-14

Appeal from the Superior Court in Maricopa County
No.  CR2012-160520-001
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By  Colby Mills
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

Rick Juan Jaramillo, Kingman
*Appellant*

_____

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Patricia A. Orozco joined.

_____

**S W A N N**, Judge:

**¶1**         Defendant Rick Juan Jaramillo appeals his conviction and sentence for resisting arrest.

**¶2**         This case comes to us as an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969).  Defendant's appellate counsel searched the record on appeal, found no arguable nonfrivolous question of law, and asks us to review the record for fundamental error.  *See Anders*, 386 U.S. 738; *Smith v. Robbins*, 528 U.S. 259 (2000); *State v. Clark*, 196 Ariz. 530, 2 P.3d 89 (App. 1999).  Defendant has filed a supplemental brief *in propria persona* in which he raises several issues for appeal.  Pursuant to *Penson v. Ohio*, 488 U.S. 75, 83 (1988) we ordered and received supplemental briefing from the state and defense counsel regarding Defendant's sentence.

**¶3**         Having searched the record and considered the briefing, we discern no fundamental error.  We therefore affirm Defendant's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

**¶4**         The state charged Defendant with one count of resisting arrest, a class 6 felony under A.R.S. § 13-2508, and alleged that Defendant had two historical prior felony convictions.  Defendant pled not guilty and the matter proceeded to a jury trial.

**¶5**         At trial, the state presented evidence of the following facts.  On November 28, 2012, detectives from the Phoenix Police Department's Fugitive Apprehension Detail were searching for Defendant with the intent to arrest him for an outstanding misdemeanor arrest warrant.  That evening, Detective Joseph Newbern drove an unmarked police vehicle through the well-lit parking lot of an apartment complex where Defendant was known to stay.  Observing Defendant park his vehicle in the lot, Det. Newbern promptly notified his squad members of Defendant's location.  Moments later, Det. Brandon Cozad drove his unmarked police vehicle into the lot, parked behind Defendant's vehicle, and activated the red-and-blue lights mounted on his windshield.  Defendant exited his vehicle and began walking toward the apartment complex.  Det. Cozad, who

was wearing a vest labeled "Phoenix Police," followed suit, announced himself as a police officer, and commanded Defendant to stop.

¶6        Defendant looked back at Det. Cozad and began to run.  Det. Cozad, followed by Det. Newbern, gave chase and Defendant ran into an apartment.  The detectives attempted to kick in the apartment door but were unsuccessful.  Yelling, they repeatedly announced themselves as police officers and commanded that the door be opened.  Eventually, a woman opened the door.  The detectives ordered the woman and her children to exit the apartment and yelled from the doorway for Defendant to come out.  Det. Cozad, assisted by other detectives who had since arrived on the scene, then conducted a protective sweep of the apartment.  They did not find Defendant.  But when Dets. Cozad and Newbern re-checked the living room, Det. Cozad noticed that the living room couch was angled slightly away from the wall.  When Det. Cozad looked over the edge of the couch, he could see part of a person's arm.  Working together, Dets. Cozad and Newbern lifted the couch and found Defendant lying flat beneath it.

¶7        Exposed, Defendant scrambled on his hands and knees toward the apartment door, his upper body making contact with Det. Newbern's left leg.  Knocked off balance, Det. Newbern stepped back.  According to Det. Newbern, had he not stepped back he probably would have fallen and hit his head on the wall.  Regaining his balance, Det. Newbern grabbed Defendant's shirt and pushed down on his upper body while Det. Cozad pushed down on his lower body.  Defendant struggled to rise and flailed his arms as the detectives attempted to handcuff him.  During this encounter, the detectives repeatedly identified themselves as police officers and instructed Defendant to stop resisting.  After about thirty to sixty seconds, the detectives were able to handcuff Defendant.  Defendant, who sustained a broken nose, was then provided medical treatment and booked.

¶8        At the conclusion of the state's case-in-chief, Defendant moved for a judgment of acquittal.  The court denied the motion and Defendant rested.  After considering the evidence, the jury found Defendant guilty.

¶9        At sentencing, Defendant admitted that he had two prior felony convictions, for: (1) aggravated assault, a class 3 felony, committed on November 28, 2002; and (2) endangerment, a class 6 felony, committed on April 15, 2007.  The court entered judgment on the jury's verdict and sentenced Defendant as a category three repetitive offender under A.R.S. § 13-703, imposing the minimum term of three years in prison and crediting Defendant with 34 days of presentence incarceration.   Defendant timely appeals.

**DISCUSSION**

¶10        We discern no fundamental error.

¶11        Defendant was present and represented by counsel at all critical stages. The jury was comprised of eight jurors in accordance with A.R.S. § 21-102(B) and Ariz. R. Crim. P. 18.1(a), and the evidence presented at trial was properly admissible and sufficient to support the jury's verdict.

> A person commits resisting arrest by intentionally preventing or attempting to prevent a person known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by . . . using . . . physical force against the peace officer . . . [or by u]sing any other means creating a substantial risk of causing physical injury to the peace officer.

A.R.S. § 13-2508(A)(1)-(2). The state presented evidence that Det. Cozad used red-and-blue vehicle lights and wore a "Phoenix Police" vest when he contacted Defendant in the parking lot in an attempt to arrest him, and both he and Det. Newbern repeatedly identified themselves to Defendant as police officers. The state also presented evidence that Defendant ran, hid, and, when discovered, knocked Det. Newbern off balance and flailed his arms as the detectives attempted to control him. Defendant contends that this evidence was based on perjured testimony. Witness credibility, however, was for the jury to decide. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27, 174 P.3d 265, 269 (2007).

¶12        The state's closing and rebuttal arguments do not provide grounds for reversal. Defendant moved for mistrial based on the prosecutor's remark that "If the Defense wanted, they could have subpoenaed a witness to say there was something else going on that night." The court's denial of the motion was not error. Mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43, 74 P.3d 231, 244 (2003) (citation omitted). Though the prosecutor's remark arguably suggested that Defendant bore the burden of proof, this incorrect implication was tenuous at best. Further, the jury was properly instructed on the burden of proof, and we presume that jurors follow their instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006). We further find no error based on the prosecutor's comments in rebuttal that "Defendant didn't want to be interviewed . . . [because h]e was upset, because of the injury he received[, and] . . . didn't want to discuss anything." These statements did not constitute improper commentary on Defendant's right to remain silent; the comments

merely provided an explanation for the failure to conduct an interview that Defendant emphasized in his closing argument.

¶13 Defendant contends that the questions that the jury submitted during the trial and their deliberations demonstrated that they were "unclear and did not understand the case," and that their questions remained "unanswered." Defendant's argument presumably refers to the several fact-related questions that the jury submitted during deliberations, and the court's response that "[y]ou will have to make your decisions based on what you recall of the evidence." Contrary to Defendant's contention, the questions did not demonstrate a misunderstanding of the case, and the jury was properly instructed to base its decisions on the evidence presented. Further, we discern no error in the court's instructions to the jury regarding the deliberation schedule. On the afternoon that deliberations began, the court instructed the jurors that security protocol required them to leave the building by 5:00 p.m. and they could determine when they wanted to return, which could be after one of the jurors completed an upcoming vacation. This instruction was appropriate and there is no indication that it influenced the verdict -- the jury continued to deliberate after the instruction was given, and was in fact allowed to render its verdict past the 5:00 p.m. deadline.

¶14 At sentencing, Defendant was given an opportunity to speak and the court stated on the record the evidence and materials it considered and the factors it found in imposing the sentence. The sentence imposed was for a defendant with two historical prior felony convictions under A.R.S. § 13-703. Defendant admitted to the fact of two prior felony convictions after an appropriate colloquy. *See* Ariz. R. Crim. P. 17.6; *State v. Carter*, 216 Ariz. 286, 289, ¶¶ 13-14, 165 P.3d 687, 690 (App. 2007). His admission to the prior conviction for aggravated assault established the existence of one historical prior felony conviction under A.R.S. § 13-105. But under that statute, his admission to the prior conviction for endangerment could establish a historical prior felony conviction only if he also admitted, or the state otherwise proved, that he was on absconder status while on probation, on escape status, or incarcerated for at least 228 days between the dates of commission for the prior conviction and the trial offense. Defendant made no such admission. On this record, however, there is no reversible error and no need for a remand because the evidence is sufficient to disprove prejudice. *See State v. Morales*, 215 Ariz. 59, 61-62, ¶¶ 10-13, 157 P.3d 479, 481-82 (2007) (holding that when colloquy required by Rule 17.6 is not given, remand to determine prejudice is not required if record contains sufficient evidence of prior convictions). Defendant was sentenced to a one-year prison term for the endangerment conviction on August 29, 2007, with credit for 36 days

of presentence incarceration.[1] Though the record does not directly state how much of this sentence Defendant actually served, Defendant told the court at sentencing that "[t]he last time I was in prison . . . was March 16th, 2008." Defendant's statement, combined with the minute entry imposing sentence for the endangerment conviction and his criminal history report's failure to reflect any arrests for different offenses between August 29, 2007, and March 16, 2008,[2] adequately shows that he was subject to uninterrupted incarceration for more than 228 days between the day he committed endangerment and the day he committed the trial offense. Accordingly, the court did not commit reversible error by sentencing Defendant as a repetitive offender with two historical prior felony convictions. The court imposed a legal sentence under A.R.S. § 13-703(A), and correctly calculated Defendant's presentence incarceration credit under A.R.S. § 13-712(B).

**CONCLUSION**

¶15     We have reviewed the record for fundamental error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Accordingly, we affirm Defendant's conviction and sentence.

---

[1]     We take judicial notice of the superior court's minute entry imposing sentence for the endangerment conviction. *See* Ariz. R. Evid. 201; *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4, 10 P.3d 1211, 1212 (App. 2000).

[2]     We may rely on the information set forth in the unobjected-to criminal history report to disprove prejudice from Defendant's failure to clearly admit to the intervening incarceration required to qualify his admitted-to prior conviction as a historical prior felony conviction. *See State v. Gonzales*, 233 Ariz. 455, 458-59, ¶¶ 11-12, 314 P.3d 582, 585-86 (App. 2013). But, as in *Gonzales*, "we caution trial courts against affording such unobjected-to presentence reports dispositive effect as to prior convictions during sentencing, thereby obviating the need to conduct the required colloquy or put the state to its proof." *Id.* at 459, ¶ 13, 314 P.3d at 586.

**¶16**      Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Defendant of the status of this appeal and his future options. *Id.* Defendant has 30 days from the date of this decision to file a petition for review *in propria persona. See* Ariz. R. Crim. P. 31.19(a). Upon the court's own motion, Defendant has 30 days from the date of this decision in which to file a motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt