561 P.2d 739

STATE of Arizona, Appellee,

v.

Gerald SMITH, Appellant.

No. 3629.

Supreme Court of Arizona, In Banc.

Feb. 24, 1977.

416

trial, convicted of second degree murder. He appeals.

On May 8, 1974, appellant and certain others who collectively called themselves "the family" went to Lil's Hideaway, a bar in Phoenix, Arizona. As to the events leading up to the death of Albert Washington, there are two versions—one, the appellant's, and, two, that of Sharon Roach, the State's principal witness. Roach testified that she was a member of the family and that the family engaged in various illicit activities; that she was soliciting customers for prostitution outside the bar on the night of the killing. She stated that there was no trouble between the appellant and Washington until the latter called family member Donna Taylor a "bitch." Taylor relayed Washington's words to Tyrone Williams, the leader of the group. When Washington left the bar, appellant, Williams, and family member Turner followed him outside. An argument ensued as Washington was getting into his car. During the argument, Roach noticed that Washington had a gun in his waistband. Shortly before the shooting started, Williams lifted his jacket to show Washington he was unarmed. Roach recalled that someone, other than appellant, yelled out, "Shoot him." Thereupon appellant opened fire. Turner joined in the shooting. Roach ran into the bar. When she came out, Washington was dead.

Appellant testified that Washington attacked him verbally in the bar. He alleged that he was aware of Washington's reputation for carrying a gun and being dangerous. He stated that after he exchanged insults with Washington, he left the bar to avoid him. But Washington followed him out. They continued "passing bad words." Williams and Turner then came out. Williams and Washington exchanged words. Williams indicated to Washington that he was not armed. After a short period of more insults between the appellant and Washington, appellant heard someone in the crowd shout, "Shoot that Nigger." He testified that Washington at that point drew a weapon. He claimed he drew his

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

The appellant, Gerald Smith, was charged with first degree murder and, after a jury

**418**

own gun in response and fired a number of shots in self-defense.

Appellant asserts he was denied a trial by a fair and impartial jury because the court failed to extensively question a juror who stated appellant looked familiar.

Rule 18.5(c), (d) and (e) of the Arizona Rules of Criminal Procedure prescribe the duty of the court in regard to the *voir dire* examination of jurors:

> "c. Inquiry by the Court. The court shall initiate the examination of jurors by identifying the parties and their counsel, briefly outlining the nature of the case, and explaining the purposes of the examination. It shall ask any questions which it thinks necessary touching the prospective jurors' qualifications to serve in the case on trial.
>
> d. Voir Dire Examination. The court shall conduct the *voir dire* examination, putting to the jurors all appropriate questions requested by counsel. The court may in its discretion examine one or more jurors apart from the other jurors.
>
> If good cause appears, the court may permit counsel to examine an individual juror.
>
> e. Scope of Examination. The examination of prospective jurors shall be limited to inquires directed to bases for challenge for cause or to information to enable the parties to exercise intelligently their peremptory challenges."

The purpose of Rule 18.5(d) is to place responsibility for conducting the *voir dire* examination on the court instead of counsel. *State v. Bullock,* 26 Ariz.App. 149, 546 P.2d 1158 (1976). While it is the court's duty to question potential jurors, the extent of *voir dire* examination to determine the presence or absence of prejudice is left to the sound discretion of the trial court. *State v. Riggins,* 111 Ariz. 281, 528 P.2d 625 (1974); *State v. Molina,* 5 Ariz.App. 492, 428 P.2d 437 (1967); *Hilliard v. Arizona,* 362 F.2d 908 (9th Cir. 1966). As long as there is no abuse of the court's discretion, error will not be found in the court's *voir dire* examination.

In *State v. Lovell,* 97 Ariz. 269, 399 P.2d 674 (1965), we held that ample opportunity was given to counsel where the court limited the examination of individual jurors to those circumstances where a juror answered a general question affirmatively. The holding of *Lovell* is authority for our decision here. Where a juror does not give an affirmative answer to a general question, the court need not inquire further as long as the general question can uncover the information necessary to aid counsel in exercising a challenge.

In the present case, the juror did not answer affirmatively that he knew the appellant. That appellant may have looked familiar does not trigger the necessity for additional inquiry. Moreover, the court instructed the juror to inform the court if he later remembered appellant, which seemingly did not occur. We find no abuse of discretion in refusing to question the juror further.

Appellant asserts that four comments by the prosecutor in his closing argument were so prejudicial as to constitute fundamental error. The four comments were:

1. "She said they told her she knew too much and that she would never leave the family, as it was called, alive—the killings, and the girls working, any other illegal activities."

2. "The relationship, she · said she worked for Williams as a prostitute, and Smith and Turner did pretty well what Williams said. They kind of watched over the girls and took them out and did various other things with them."

3. "He said that Mr. Williams was Sharon Roach's pimp. That is probably the slang expression for it, and it is true. But what was the defendant Smith? He was in the operation right up to his neck. He ran the gals around and did what Williams said."

4. "If you want to deter people or stop people like Sharon Roach from coming in and testifying to a crime that would really never have been prosecuted because everyone is so afraid,

and totally so, of testifying against a defendant like this, then you acquit this defendant of this crime."

■ It is, of course, improper for an attorney to argue matters which were not or could not have been introduced in evidence. *State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973). We have, however, stated the test to determine if the comments require reversal to be:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks." *Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936).

It is a two-part test. First, does the comment present matters the jurors should not consider and, second, was the jury influenced by the remarks. Appellant asserts that the comments imply he was involved in other crimes and that this prejudiced him because it allowed the jury to consider improper matters in arriving at a verdict.

■ The first three comments properly state the evidence pertaining to certain of the facts surrounding the murder. These circumstances are inseparable from the crime, and, as such, are part of the whole story. *State v. Villavicencio,* 95 Ariz. 199, 388 P.2d 245 (1964); *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (Filed December 20, 1976).

The first comment was an accurate consideration of Roach's answer to the defense attorney's question of why she suddenly offered her testimony. It related to Roach's credibility and was, therefore, appropriate for comment.

The second comment accurately portrayed the evidence of the relationship between the three persons involved in the dispute with the victim.

■ The third comment, like the second, stated the evidence of the appellant's rela-

tionship with the family. Moreover, defense counsel in his argument pointed out Roach's association with the family in criminal activities. We can think of no reason why the defense should be permitted to refer to Roach's criminal activities as part of the family and then condemn the State for arguing the evidence of the appellant's complicity in the same crimes. *See State v. Jaramillo,* 110 Ariz. 481, 520 P.2d 1105 (1974).

■ The fourth comment was obviously an emotional appeal to the jury to do its duty. The State drew the jury's attention to the difficulty of getting witnesses to testify against dangerous defendants and then tried to impress upon it the consequences of its failure to carry out its duty. We find nothing which disturbs us in the arguments.

The appellant next contends that the trial court erred by not conducting a voluntariness hearing in regard to certain statements the appellant made to Police Officer Martin Wittfield. The State asked Wittfield whether appellant told him that a .380 automatic was not his and that someone else had planted the gun on him. Officer Wittfield answered that he did.

■ A defendant has the constitutional right to object to the use of a confession and to have a fair hearing to resolve the issue of the voluntariness of the confession. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *Jackson* also applies to admissions against interest and exculpatory statements, *State v. Owen,* 96 Ariz. 274, 394 P.2d 206 (1964). But a defendant must object to the admission of the statements before he can claim error. *State v. Bray,* 106 Ariz. 185, 472 P.2d 54 (1970); *State v. Scanlon,* 104 Ariz. 187, 450 P.2d 377 (1969). The trial court is not required to *sua sponte* enter upon an examination to determine the voluntary nature of evidence. *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974); *State v. Armstrong,* 103 Ariz. 280, 440 P.2d 307 (1968). The appellant's attorney not only failed to object to the admission of Officer Wittfield's testimo-

ny, but the record shows he specifically waived both a voluntariness hearing and any instructions to the jury regarding the statement.

Appellant's final claim of error is that the State on cross-examination asked of the appellant certain questions which brought out the details of a previous felony conviction. No objection was made to the questions at the time of the cross-examination, but it is now asserted that this constitutes fundamental error. It is not. Fundamental error is error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial. It usually, if not always, involves the loss of federal constitutional rights. A claim of fundamental error is not a springboard to reversal where present counsel is simply second-guessing trial counsel.

For the foregoing reasons, judgment is affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.