61 P.3d 450

**STATE of Arizona, Appellee,**

v.

**Wayne Benoit PRINCE, Appellant.**

**No. CR–00–0328–AP.**

Supreme Court of Arizona,
En Banc.

Jan. 16, 2003.

Janet A. Napolitano, Arizona Attorney General, by Kent E. Cattani, Chief Counsel, Capital Litigation Section, Robert L. Ellman, Assistant Attorney General, Phoenix, for Appellee.

Maricopa County Public Defender, by James L. Edgar, Deputy Public Defender, Charles R. Krull, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

ZLAKET, Justice (Retired).

¶ 1 Appellant Wayne Benoit Prince was found guilty of first degree murder and attempted first degree murder. He was sentenced to death for the homicide and to twenty-one years imprisonment on the attempt conviction. An automatic notice of appeal was filed. We have jurisdiction pursuant to Article VI, Section 5(3) of the Arizona Constitution, sections 13–4031 and 13–4033 of the Arizona Revised Statutes, and Rule 31.2(b) of the Arizona Rules of Criminal Procedure.

¶ 2 Prince and Christine Parker met in May 1996 and soon thereafter began living together with her two children. The couple was married in February 1997. Beginning shortly after they met and escalating until March 25, 1998, the appellant physically abused Christine. On that date, they were involved in a heated domestic dispute. It began with yelling and screaming but quickly progressed to physical violence. The appellant punched his wife and rammed her head into a closet wall. He also brandished a gun that was kept in the couple's bedroom.

¶ 3 Christine's son was asleep during the incident, but Cassandra, her thirteen-year-old daughter, attempted to flee the apartment to summon help. Prince locked the front door, grabbed the young girl under the arm, and threw her down on the floor. He announced that he would kill the children and his wife and then turn the gun on himself. He pushed Christine into Cassandra's bedroom, where the youngster was by that time seated on her bed. Christine attempted to call the police and Prince hollered, "Who is

gonna help you now, bitch. Who is gonna save you!" Christine tried to reason with the appellant and stepped between him and her daughter. Prince punched her in the face. Then, holding a pillow around the gun, he fired one shot that struck Cassandra in the head. The medical examiner testified that the gun was within inches of the girl when it discharged. Next, Prince turned the gun on Christine and fired, hitting her in the lower jaw. He fled the scene and hid in a nearby vacant apartment until police apprehended him.

¶ 4 Prince contended at trial that Cassandra's shooting was accidental. He claimed that the gun fired while he was attempting to remove it from the pillow. He admitted, without explanation, shooting his wife.

## TRIAL ISSUES

### A. Prior Bad Act Evidence

¶ 5 Before trial, the prosecution moved to introduce Christine's testimony concerning prior violent acts and threats made against her by the appellant, which began shortly after they met and continued until the shooting. In November 1997, for example, the appellant had allegedly beaten his wife and threatened to kill her with a knife that he held to her throat. Following a hearing, the trial court concluded that evidence of prior bad acts occurring on or after November 1997 would be relevant and not unfairly prejudicial with respect to the attempt count, but should not be admitted regarding the first degree murder charge. It also ruled that acts prior to November 1997 were inadmissible.

¶ 6 At trial, Christine's testimony was consistent with her statements at the hearing. Her son stated that he had heard arguments between his mother and stepfather and had seen bruises on her body. A friend named Nicole described a bruise or mark on Christine's chest in the shape of a cross. In addition, there was ample evidence from other witnesses at trial concerning the domestic abuse.

¶ 7 Appellant concedes that the evidence was admissible as to the attempted murder charge, but argues that the court's limiting instruction was inadequate with respect to the capital count. He claims that the instruction should have explicitly directed the jurors not to consider the evidence in connection with the first degree murder charge. The state argues that the instruction was proper and, in the alternative, that any error was harmless because other evidence showed intent and premeditation. The state also contends that the prior bad act evidence should have been admitted as to both counts.

¶ 8 The trial judge indicated on the record that the attorneys and the court discussed jury instructions for approximately an hour, during which he received substantial input from both counsel. Despite this opportunity, Prince did not object to the limiting instruction about which he now complains. Objections not raised are waived, except where fundamental error is involved. *E.g.*, *State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991) ("Fundamental error is error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.") (quoting *State v. Smith*, 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977)).

¶ 9 We have stated that jury instructions "must be viewed in their entirety in order to determine whether they accurately reflect the law." *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75, 14 P.3d 997, 1015 (2000). We also presume that jurors follow instructions. *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996) ("[E]xperience teaches us that [jurors] possess both common sense and a strong desire to properly perform their duties.").

¶ 10 The jurors here were given a typical instruction concerning prior bad acts.[1] It specifically limited their consideration of the

---

1. The instruction stated:

 Evidence of other alleged acts of the defendant have been admitted in this case. You must not consider this evidence to prove the defendant's character or that the defendant acted in conformity with that character. However, you may consider that evidence only as it relates to the defendant's intent or knowledge as those elements may apply to *the crime charged in Count 2 of the indictment*. You may not consider this evidence for any other purpose. (Emphasis added.)

evidence to the attempt count. They were also told that "[e]ach count charges a separate and distinct offense. You must decide each count separately on the evidence with the law applicable to it, uninfluenced by your decision on any other count." When Christine finished testifying about the November 1997 incident, the judge interjected, telling the jury that the evidence could not be considered to prove the defendant's character and was applicable only to the attempted murder charge. Defense counsel, in closing argument, also reminded the jurors that they were to follow the court's instructions. The instructions were adequate. We find no error here and certainly no fundamental error.

## B. Motion to Sever Counts 1 and 2

### 1. Severance of right

¶ 11 When the trial court ruled that the domestic abuse evidence was admissible with respect to a single count, the appellant moved for severance. He claimed that such evidence would be unduly prejudicial to the capital charge. The state objected on grounds that the motion was too late. The trial court ruled that the motion was timely but denied it because the crimes occurred "virtually simultaneously."

¶ 12 Rule 13.4(c) of the Arizona Rules of Criminal Procedure (2002) states in part:

> A defendant's motion to sever offenses . . . must be made at least 20 days prior to trial or at the omnibus hearing and, if denied, renewed during trial at or before the close of evidence. If a ground not previously known arises during trial, the defendant must move for severance at or before the close of the evidence. Severance is waived if a proper motion is not timely made and renewed.

Appellant was aware of the state's intention to use this evidence when the prosecution filed its notice on October 27, 1998. Nevertheless, he claims that a basis for severance did not arise until the court ruled the abuse evidence admissible.

¶ 13 The appellant also asserts that because the facts did not support joinder under Rule 13.3(a)(3),[2] he was entitled to severance as a matter of right.[3] The trial court has broad discretion in such matters. Its decision will not be disturbed absent a clear abuse of such discretion. *State v. Walden*, 183 Ariz. 595, 605, 905 P.2d 974, 984 (1995). "When a defendant challenges a denial of severance on appeal, he 'must demonstrate compelling prejudice against which the trial court was unable to protect.'" *State v. Murray*, 184 Ariz. 9, 25, 906 P.2d 542, 558 (1995) (quoting *State v. Cruz*, 137 Ariz. 541, 544, 672 P.2d 470, 473 (1983)).

¶ 14 Consistent with Rule 13.3(a), we have held that crimes can be joined not only when they are of the same or similar character, but also when they arise out of the same conduct. *State v. McGill*, 119 Ariz. 329, 332, 580 P.2d 1183, 1186 (1978). In such an instance, the defendant is not entitled to a severance unless it is "necessary to promote a fair determination of guilt or innocence." Ariz. R.Crim. P. 13.4(a).

¶ 15 Here, the two crimes occurred within seconds of each other and arose out of the same domestic dispute. Joinder was proper pursuant to either Rule 13.3(a)(1) or (2). The appellant was not entitled to severance as a matter of right.

### 2. Severance on fairness grounds

¶ 16 In the alternative, Prince argues that a severance on fairness grounds pursu-

---

**2.** Arizona Rule of Criminal Procedure 13.3(a) states:

Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
(1) Are of the same or similar character; or
(2) Are based on the same conduct or are otherwise connected together in their commission; or
(3) Are alleged to have been part of a common scheme or plan.

**3.** Arizona Rule of Criminal Procedure 13.4(b) states:

The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1), unless evidence of the other offense or offenses would be admissible under applicable rules of evidence if the offenses were tried separately.

ant to Rule 13.4(a)[4] should have been granted after the state's opening statement, when the prosecutor said:

> Now, Mr. Prince and Christy were married February of 1997. They met back in the previous May. *It was not good even before they got married.* There was domestic violence where Christy was hit and struck. *She still married him.* It wasn't long after that he was still . . . .

(Emphasis added.) At this point, defense counsel requested a sidebar conference. Because all evidence concerning domestic abuse prior to November 1997 had been ruled inadmissible, the judge suggested that the prosecutor tell the jury that he made an error regarding the dates. The lawyer resumed his statement as follows:

> Let me go back. I was mistaken about the dates. They were married in February of 1997 and starting in November of that year, November of 1997, there were threats by the defendant to kill Christy . . . . During this period, from November— and I misspoke, as I say. I misspoke before. From November until the previous—to the next March of 1998, there was this history of abuse . . . .

¶ 17 Joinder is permitted where separate crimes arise out of a series of connected acts, provable by much of the same evidence. *See, e.g., State v. Martinez–Villareal,* 145 Ariz. 441, 446, 702 P.2d 670, 675 (1985). The offenses here arose out of a single domestic dispute. The same weapon was used and the crimes occurred within seconds of each other. The primary evidence concerning both offenses came from the testimony of Christine and the appellant. In *State v. Atwood,* 171 Ariz. 576, 613, 832 P.2d 593, 630 (1992), we held that a defendant is not prejudiced by a denial of severance where the jury is instructed to consider each offense separately and advised that each must be proven beyond a reasonable doubt. The jury was so instructed here. The trial court did not

abuse its discretion in denying the motion to sever.

## C. Mistrial Motion

¶ 18 At the conclusion of the state's opening statement, the defense renewed its motion for mistrial based on the prosecutor's statements. The judge denied the motion, remarking that while counsel and the court viewed these statements in terms of the prior ruling concerning inadmissibility, the jury had no real idea of their significance.

¶ 19 Prejudice does not necessarily follow from improper argument. *State v. Roscoe,* 184 Ariz. 484, 496–97, 910 P.2d 635, 647–48 (1996).

> [T]he trial judge is always in the best position to determine whether a particular incident calls for a mistrial. The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial.

*State v. Koch,* 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983) (citations omitted).

¶ 20 In determining whether a mistrial is warranted, the court is required to consider "[f]irst, does the comment present matters the jurors should not consider and, second, was the jury influenced by the remarks." *State v. Smith,* 114 Ariz. 415, 419, 561 P.2d 739, 743 (1977). An improper remark compels a new trial only if it probably influenced the jury in determining their verdict and thus denied the defendant a fair trial. *State v. Hansen,* 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988).

¶ 21 In this case, the prosecutor mentioned evidence that was inadmissible. He then immediately retracted the offensive comments. We are unable to find that the jury was influenced by these statements. The court did not abuse its discretion in denying the motion for a mistrial.

---

4. Arizona Rule of Criminal Procedure 13.4(a) states:

> Whenever 2 or more offenses . . . have been joined for trial, and severance of any or all offenses . . . is necessary to promote a fair

determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

## D. Closing Arguments

 ¶ 22 In closing argument, the prosecutor stated:

We have a situation here where there are previous threats to kill the *victim* over the course of time from November until this incident happened. There are times where he said you know, I know places that have mine shafts out near Wickenburg where you can be buried. I can kill you and bury your body. There are previous threats to kill, and we have that night the defendant who is angry, who pounds the *victim's* head into the wall.... He makes threats. He carries through on the threats. He locks the door. He prepares to commit this murder. That is what happened in this case. It is a premeditated first degree murder. That is all I have to say.

(Emphasis added.) Prince claims that these comments improperly suggested a connection between his prior threatening conduct and the premeditation required for a first degree murder conviction. The defense, however, failed to object at trial, thereby waiving all but fundamental error. *State v. Lee,* 185 Ariz. 549, 554, 917 P.2d 692, 697 (1996).

 ¶ 23 In closing argument, counsel is usually permitted wide latitude. *State v. Zaragoza,* 135 Ariz. 63, 68, 659 P.2d 22, 27 (1983). This freedom is tempered by the prohibition against commenting on matters not introduced in evidence. *Id.* Obviously, the jury must determine guilt or innocence based only on admitted evidence. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

¶ 24 The appellant asserts that "it is impossible to conclude that the jurors were not probably influenced by the prosecutor's comments." Although the closing argument was a bit confusing, it does not rise to the level of fundamental error. The use of the singular "victim" arguably tends to make it unclear whether the lawyer was referring to Christine or Cassandra. However, the first portion of his remarks clearly referred to Christine because of the prior threats to kill her and throw her body down a mineshaft. Moreover, the statement about smashing "the victim's head into the wall" described what occurred to Christine, not Cassandra.

The threats mentioned in the second part of the passage referred to those made on the evening in question. We find no reversible error. *Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936) (requiring a finding that jurors have been influenced by improper argument).

## E. *Portillo* Reasonable Doubt Instruction

¶ 25 The jury was given the reasonable doubt instruction approved in *State v. Portillo,* 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). Prince argues that this was fundamental error because the instruction lowers the burden of proof to a clear and convincing standard. We rejected this argument in *State v. Van Adams,* 194 Ariz. 408, 418, ¶¶ 29–30, 984 P.2d 16, 26 (1999). "We have clearly indicated our preference for this instruction ...." *Id.*

## F. Death Qualifying the Jury

¶ 26 Prince contends that death qualifying the jury denied him the right to a jury drawn from a cross-section of the community and favored a panel more likely to convict. We have previously rejected this argument. *Hoskins,* 199 Ariz. at 141, ¶¶ 49–50, 14 P.3d at 1011.

## CAPITAL SENTENCING ISSUES

¶ 27 For the reasons set forth in *State v. Jones,* 203 Ariz. 1, 49 P.3d 273 (2002), this opinion is not a final disposition of the case. Any motion for reconsideration appropriately directed to the issues decided herein, however, should be filed as provided by the existing rules. *See* Ariz. R.Crim. P. 31.18. A supplemental opinion regarding capital sentencing issues will be forthcoming.

## DISPOSITION

¶ 28 Appellant's convictions and his sentence on the attempted murder charge are affirmed. His sentence on the murder conviction is to be addressed in a supplemental opinion.

CONCURRING: CHARLES E. JONES, Chief Justice, RUTH V. McGREGOR, Vice

Chief Justice, STANLEY G. FELDMAN, Justice (Retired), and SUSAN A. EHRLICH, Judge.*