NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERONIMO LINARES, *Appellant.*

No. 1 CA-CR 15-0614
FILED 9-13-2016

Appeal from the Superior Court in Maricopa County
No.  CR2015-103476-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric K. Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence H. Blieden
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Lawrence F. Winthrop joined.

---

H O W E, Judge:

¶1          Jeronimo Linares appeals his conviction and imposition of probation for child abuse. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          One January day in 2015, Linares dropped his two-year old daughter off at daycare. Two daycare workers noticed that the child had numerous bruises on her legs, torso, arms, and neck that she did not have the day before. When asked where she got the "owies," the child responded, "Daddy." The daycare then reported the bruises to law enforcement.

¶3          An investigator from the Office of Child Welfare Investigations and an investigator from the Department of Child Safety went to the daycare to speak with the daycare workers and see the child. Based on his observations, one investigator called Mesa police to take over the investigation at the daycare. When the officers arrived, the investigator took the child for a forensic examination at a nearby wellness center. A forensic nurse examiner counted about 25 bruises on the child and concluded that their locations were consistent with non-accidental injuries.

¶4          After the forensic examination, the investigator returned to the daycare to wait with the police officers for Linares to arrive. When Linares arrived, the investigators and two officers recorded an interview with him in one of the daycare's offices. During the interview, Linares was not handcuffed and was seated nearest the door, across from the officers. Before the officers or investigators asked any questions, Linares asked if they were there to talk about the bruises on the child's body and stated that he did not know how they got there. He said that he had taken his daughter to a clinic, which told him that the bruises were the result of an allergic reaction. Because Linares is a native Spanish speaker, one of the investigators translated the conversation.

¶5        Midway through the interview, one officer warned Linares to stop "playing games" and threatened to charge him with lying to a police officer. One investigator added that he would make sure that the State would remove the child from Linares. Linares did not change his story despite the threats, however, and continued to deny knowing what caused the bruises. Ultimately, the officers decided to arrest Linares. Because the arrest concluded the interview, the investigator turned off the recording device.

¶6        But once in handcuffs, Linares started crying and said that he had grabbed his daughter the night before when she tried to run out of the bathroom as he was trying to bathe her. He told the officers and investigators, "I didn't mean to go as far as I did." After Linares made this statement, the investigator turned the recording device back on and read Linares his *Miranda*[1] rights, after which Linares agreed to answer questions. One officer then repeated what Linares had told them and Linares responded by apologizing for his actions and saying that it would never happen again. The State charged Linares with one count of child abuse.

¶7        Before his jury trial, Linares moved to preclude the forensic nurse examiner from testifying that the injuries were "non-accidental" or "inflicted injuries." Linares also moved to preclude her from offering any diagnoses of the causes of the child's injuries, arguing that, as a nurse, she was only qualified to make observations, not diagnoses. At the evidentiary hearing, Linares further argued that Arizona Rule of Evidence 704(b) —which prohibits expert witnesses in a criminal case from opining whether the defendant had a "mental state or condition that constitutes an element of the crime charged or of a defense"—prohibited the forensic nurse's testimony because "inflicted" is a term used in the statute defining child abuse. The forensic nurse testified that she had training in examining children and expertise in children's injuries that would help the jurors better understand the extent and nature of the injuries and the significance of their locations.

¶8        The trial court denied Linares' motion to preclude. The court concluded that Arizona Rule of Evidence 702—relating to expert testimony—permitted the forensic nurse's opinion that the injuries were consistent with non-accidental injuries. The court also noted that the testimony was relevant and not otherwise inadmissible under Rule 704(b). Later during the forensic nurse's trial testimony, she identified and described the locations of the child's injuries for the jury and explained that, based on scientific research and studies she had read, she concluded that

---

[1]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

the injuries may have been the result of "inflicted trauma." Upon cross-examination, Linares had the forensic nurse clarify that, although she believed the injuries to be non-accidental, she could not determine whether the injuries were inflicted "with intent to cause injury."

**¶9** As part of its case-in-chief, the State notified the trial court and Linares that it intended to introduce and play the portions of the recorded interview during which Linares admitted that he grabbed the child. The State argued, however, that because the officer that conducted the interview was not testifying at trial, his statements on the recording were hearsay and should be omitted. Linares objected to the State's use of only portions of the interview, arguing that such use violated the rule of completeness under Arizona Rule of Evidence 106 because the jury would not hear the officer's and investigator's threatening comments. Linares and the State then worked together to redact the recording, and the trial court ultimately admitted it into evidence upon the parties' stipulation.

**¶10** After deliberating, the jury convicted Linares of child abuse and found that the offense was a domestic violence offense. The court suspended sentencing and imposed three years' probation. Linares timely appealed.

## DISCUSSION

### 1. Voluntariness

**¶11** Linares first argues that the trial court fundamentally erred by failing to *sua sponte* conduct a voluntariness hearing regarding Linares' recorded confession, which could have led to the confession's preclusion. Because Linares did not raise this objection at trial, we review his claim for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 568 ¶ 22, 115 P.3d 601, 608 (2005). To prevail under a fundamental error review, a defendant must prove that the trial court erred, the error was fundamental, and the error prejudiced him. *Id.* at 567 ¶ 20, 115 P.3d at 607. Error is fundamental when it goes to the foundation of the defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial. *Id.* at ¶ 19, 115 P.3d at 607. But because the trial court did not have an obligation to conduct a voluntariness hearing on its own accord, the court did not err, much less fundamentally, by failing to determine voluntariness before admitting the confession.

**¶12** Due process affords a defendant a constitutional right at some stage in the criminal proceedings to object to the use of a confession and to

have a fair hearing and reliable determination on the issue of voluntariness. *Jackson v. Denno*, 378 U.S. 368, 376–77 (1964). However, "absent some contemporaneous challenge to the use of the confession," the United States Constitution does not require the trial court to conduct a voluntariness hearing. *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Although A.R.S. § 13–3988 requires the trial court to "determine any issue as to voluntariness" before admitting a statement into evidence, the burden of raising any issue of voluntariness rests in the first instance with the defendant, *State v. Alvarado*, 121 Ariz. 485, 487, 591 P.2d 973, 975 (1979). The trial court is not required to determine the voluntariness of evidence *sua sponte*. *State v. Smith*, 114 Ariz. 415, 419, 561 P.2d 739, 743 (1977).

¶13 Here, Linares did not request a voluntariness hearing, object to the confession's admission, or otherwise raise issue of involuntariness. In fact, although Linares moved to preclude the State from introducing several portions of the State's evidence before trial, he did not move to suppress his recorded statement. Additionally, not only did Linares fail to object to the admission of the recorded interview during trial, but he argued that the rule of completeness required the State to play additional parts of the recording for the jury. Linares worked with the State to redact the recording and the trial court admitted it upon the State's and Linares' stipulation.

¶14 Nor did the evidence otherwise present a question regarding the voluntariness of Linares' confession to require the court to conduct a hearing, as Linares argues. Nothing in the record suggests that the officers or investigator coerced Linares to confess or that Linares' will was overborne. *See State v. Boggs*, 218 Ariz. 325, 335–36 ¶ 44, 185 P.3d 111, 121–22 (2008) ("To find a confession involuntary, we must find both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will."). Despite the officer's demeanor and the investigator's threat to remove the child from him, Linares maintained his innocence and repeatedly insisted that he did not know where the bruises on his daughter's body came from. During this time, Linares was not in handcuffs and was seated closest to the daycare office's door. Only after the interview had concluded and police had arrested him did Linares' own demeanor change and—crying—he confessed that he grabbed his daughter the night before. After Linares said that he did not mean to go as far as he did, the investigator turned the recorder back on and read Linares his *Miranda* rights, which he waived. The officer then repeated Linares' statement to Linares. Linares acknowledged the statement and apologized. Thus, because Linares failed to raise an issue regarding his confession's voluntariness and the evidence did not otherwise present a question

regarding voluntariness, the trial court did not err—much less fundamentally err—by not conducting a hearing *sua sponte*.

## 2. Expert Testimony

**¶15**        Linares next argues that the forensic nurse's testimony identifying and describing the injuries was inadmissible under Arizona Rule of Evidence 702(a) because the bruises' locations were within the common knowledge of jurors and did not help the jurors understand the evidence. Generally, we review a court's admissibility ruling for abuse of discretion. *State v. Dann*, 220 Ariz. 351, 368 ¶ 89, 207 P.3d 604, 621 (2009). But because Linares did not object to the forensic nurse's testimony on this ground during trial, we review his argument for fundamental error only. *Henderson*, 210 Ariz. at 567 ¶ 20, 115 P.3d at 607. Linares fails to meet his burden on fundamental error review.

**¶16**        Rule 702(a) provides that an expert may testify if "the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Here, the forensic nurse testified that she had training in examining children and an expertise in children's injuries. This expertise would help the jurors better understand the extent and nature of the child's injuries and the significance of their locations. The forensic nurse explained that, based on research and studies she had read, the locations and degrees of healing of the bruises on the child's body led her to believe that the injuries had been inflicted. Thus, because the forensic nurse had expertise in children's injuries that was outside the jurors' common knowledge and her testimony helped the jurors understand the evidence, the court committed no error—much less fundamental error—in allowing this testimony.

**¶17**        Linares also argues that he was deprived of a fair trial because the forensic nurse's opinion that the injuries were consistent with non-accidental injuries was an opinion "as to an ultimate issue in the trial." But Linares offers no argument and cites no authority for this proposition and has accordingly waived this claim of error. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (requiring that an appellant's brief contain arguments with the proper standard of review on appeal and "citations to relevant authority"); *see also State v. Moody*, 208 Ariz. 424, 452 ¶ 101 n.9, 94 P.3d 1119, 1147 n.9 (2004) (providing that failure to present "significant arguments, supported by authority" in opening brief constitutes a waiver of the issue).

**¶18**        Waiver notwithstanding, Linares' argument lacks support in both the law and the facts. Arizona Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue" and

prohibits only an opinion that addresses "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Ariz. R. Evid. 704(a), (b). As relevant here, a person commits child abuse if he intentionally or knowingly causes the child to suffer physical injury or abuse, under circumstances other than those likely to produce death or serious physical injury. *See* A.R.S. § 13–3623(B). The forensic nurse's opinion that the injuries were consistent with non-accidental injuries was based on her expertise. Her opinion did not address whether Linares had any particular mental state at the time necessary for commission of child abuse, much less whether he had an "intentional" or "knowing" mental state when he committed the abuse. Linares even elicited clarification from the forensic nurse that she could not determine whether the injuries were inflicted "with intent to cause injury." Thus, Linares' argument fails.

## CONCLUSION

¶19     For the foregoing reasons, we affirm.

