NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER LEE WOLTER, *Appellant.*

No. 1 CA-CR 17-0744
FILED 8-14-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-153240-001 DT
The Honorable Lauren R. Guyton, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

**W I N T H R O P**, Judge:

¶1         Christopher Lee Wolter ("Wolter") appeals his convictions and sentences for two counts of aggravated assault, class three dangerous felonies, and one count of unlawful discharge of a firearm, a class six dangerous felony.  Wolter's counsel filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000), *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating he has searched the record for error but failed to identify any "arguable question of law."  Wolter's counsel therefore requests that we review the record for fundamental error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (stating that this Court reviews the entire record for reversible error).  This Court allowed Wolter to file a supplemental brief *in propria persona*, but he has not done so.

¶2         We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and -4033(A) (2018).[1]  Finding no reversible error, we affirm Wolter's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY[2]

¶3         Wolter and the victim were friends and co-workers.  While at work, the victim learned that Wolter was romantically interested in the victim's fiancé and that he was messaging her on social media.  The victim confronted Wolter, verbally threatened him, and then left work after receiving permission from his boss.  When the victim returned to work the following day, he was fired for the verbal altercation he had with Wolter.  The victim sent Wolter a Facebook message the same day, apologizing for the altercation and offering to meet in person to discuss the issues between them.  Wolter did not respond to the victim, but he did continue to send messages to the victim's fiancé.  In response, two days after the verbal confrontation, the victim contacted Wolter's wife and informed her that Wolter had been messaging his fiancé.

¶4         Within thirty to forty-five minutes after the victim contacted Wolter's wife, Wolter drove to the victim's house and began repeatedly

---

[1]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

[2]        We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Wolter.  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

honking his car horn. The victim went outside and approached Wolter. When the victim was approximately ten feet from Wolter's car, Wolter exited his car holding a twelve-gauge shotgun, cocked the gun, aimed at the victim's face as he advanced on the victim, and asked, is this "how [you] want to die?" The victim put his hands up, began to back up, and then attempted to swat Wolter's gun away from his face. Wolter shot the victim's left foot. An ambulance took the victim to the hospital where his leg was amputated below the knee.

¶5 Wolter fled the scene. He drove to his parents' house and later called 9-1-1. Wolter reported that he "discharged" his weapon. He was arrested and taken into custody. Wolter received *Miranda*[3] warnings and, when questioned by a detective, Wolter admitted he fired the gun, but claimed he did so in self-defense. He claimed he "wasn't sure what had happened to [the victim]," but he "noticed [the victim] fall to the ground."

¶6 The State filed a direct complaint, charging Wolter with three counts: two counts of aggravated assault, class three dangerous felonies; and one count of unlawful discharge of a firearm, a class six dangerous felony. A grand jury indicted Wolter on the same charges. The State subsequently filed a supervening indictment, charging Wolter with the same crimes.

¶7 The case proceeded to a multi-day trial. The jury found Wolter guilty as charged. After a return of the guilty verdicts, the court held an aggravation phase. The State alleged three aggravating circumstances: (1) the offenses involved the infliction or threatened infliction of serious physical injury; (2) the offenses were dangerous; and (3) the offenses caused physical, emotional or financial harm to the victim. The jury found the State proved each aggravator beyond a reasonable doubt.

¶8 The trial court conducted the sentencing hearing in compliance with Wolter's constitutional rights and Arizona Rule of Criminal Procedure 26. The court sentenced Wolter to presumptive, concurrent sentences: 7.5 years' imprisonment for count 1; 7.5 years' imprisonment for count 2; and 2.25 years' imprisonment for count 3. Wolter received credit for 167 days of presentence incarceration. The court left the issue of restitution open for a period of five years.

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

## ANALYSIS

¶9        The record reflects Wolter received a fair trial.  He was represented by counsel at all stages of the proceedings against him and was present at all critical stages.  The court did not conduct a voluntariness hearing; however, the record did not suggest a question about the voluntariness of Wolter's statements to police.  *See State v. Smith*, 114 Ariz. 415, 419 (1977); *State v. Finn*, 111 Ariz. 271, 275 (1974).

¶10        The State presented both direct and circumstantial evidence sufficient to allow the jury to convict.  The jury was properly comprised of twelve members.  The court properly instructed the jury on the elements of the charges, the State's burden of proof, and the necessity of a unanimous verdict.  The jury returned a unanimous verdict, which was confirmed by juror polling.  The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed legal sentences for the crimes of which Wolter was convicted.

## CONCLUSION

¶11        We have reviewed the entire record for reversible error and find none.  *See Leon*, 104 Ariz. at 300.  Accordingly, we affirm Wolter's convictions and sentences.

¶12        After the filing of this decision, defense counsel's obligations pertaining to Wolter's representation in this appeal have ended.  Counsel need do no more than inform Wolter of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  Wolter has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA

4