NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

THOMAS LOUIS ADAIR, *Appellant*.

No. 1 CA-CR 18-0034
FILED 8-16-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-109770-001 DT
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James P. Beene joined.

---

**C R U Z**, Presiding Judge:

**¶1** This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Thomas Louis Adair has advised this Court that counsel found no arguable questions of law and asks us to search the record for fundamental error. Adair was convicted of three counts of sexual conduct with a minor under the age of fifteen, Class 2 felonies and dangerous crimes against children; one count of sexual abuse, a Class 3 felony and a dangerous crime against children; one count of furnishing obscene or harmful items to a minor, a Class 4 felony; and two counts of molestation of a child, Class 2 felonies and dangerous crimes against children. Adair filed a supplemental brief *in propria persona*, which the court has considered. After reviewing the record, we affirm Adair's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Adair. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

**¶3** Adair was in a relationship with the victim's ("Victim") mother for roughly two years. Victim and her mother lived with Adair for a period of time when Victim was nine to eleven years old.

**¶4** In early November 2015, Victim told her mother that Adair made her touch his penis. Victim's mother and Victim moved out that same night. Victim's mother contacted police the next morning. During a forensic interview a few days after her initial disclosure, Victim claimed Adair sexually molested her on multiple occasions. Police conducted a confrontation call with Adair, to which he denied forcing Victim to touch him.

**¶5** Adair voluntarily met with police on December 3, 2015. Adair denied the accusations. In February 2016, Adair again met with police during a recorded interview. A civilian interviewer, and then later the

detective, met with Adair, at which point Adair admitted many of the allegations. Police then offered Adair the opportunity to write a victim apology letter, apologizing for his actions.

¶6 Adair was charged with three counts of sexual conduct with a minor under the age of fifteen, Class 2 felonies (counts one, two, and three); one count of sexual abuse, a Class 3 felony (count four); two counts of furnishing obscene or harmful items to a minor, Class 4 felonies (counts five and six); and two counts of molestation of a child, Class 2 felonies (counts seven and eight).

¶7 At trial, Victim testified that Adair touched her chest while sleeping, digitally penetrated her, digitally penetrated her again on a second occasion, showed her pornographic photos on his computer and showed her a woman masturbating, kissed her breasts, placed her hand on his penis, and again placed his hand on her chest. The forensic examiner testified that during the examination, Victim disclosed Adair touched her chest, placed his mouth on her chest, and disclosed two instances of digital penetration. The detective testified Victim disclosed to her a third instance of sexual contact which Adair's recorded interview corroborated.

¶8 The State called a cold expert to testify to the general characteristics of sexual molestation victims, their actions, and factors affecting the disclosure of incidents of sexual contact, as well as the impact of sexual offense on the victim. The expert testified to grooming patterns perpetrators use on victims. The State then played the confrontation call and Adair's interview, and the detective testified that Adair admitted the majority of the accusations and wrote Victim an apology letter.

¶9 After the State rested, Adair moved to dismiss the charges for lack of evidence, and the court asked to clarify the evidence supporting counts five, six, seven, and eight. The court denied Adair's motion for counts one through five, and seven through eight, but granted the motion to dismiss count six. The State did not pursue aggravating factors. The jury found Adair guilty on all remaining counts.

¶10 The superior court conducted the sentencing hearing in compliance with Adair's constitutional rights and Arizona Rule of Criminal Procedure 26. Adair was sentenced two-and-a-half years on count five, five years on count four, to be served consecutively to count five and served concurrently with concurrent seventeen-year terms for counts seven and eight, and then to three consecutive life sentences for counts one, two, and

three.  Adair was credited 683 days presentence incarceration credit for time served.  Adair timely appealed.

## DISCUSSION

**¶11**       We review the entire record for reversible error.  *State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012).  Counsel for Adair has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law.  In his supplemental brief, Adair argues his statements to the lead detective were involuntary and thus should not have been considered by the jury.  Adair also argues that he was not advised of his rights during the indictment hearing or arraignment hearing.  We take each argument in turn.

I.       Voluntariness of Statements

**¶12**       Adair argues that statements he made to the detective were involuntary because his will was overborne.  Adair claims statements he made to the detective were coerced because the civilian interviewer assured him that if he spoke with police he would receive an alternative sentence to prison.[1]  Adair claims the detective told him he might receive probation.  Adair claims he was led to believe that he had sufficiently helped the police to justify a sentence of probation, and thus believed he should not accept a plea deal that was more severe.[2]

**¶13**       After reviewing the record, we find that it does not support Adair's claims.  Adair did not challenge the voluntariness of his statements before trial, nor did the evidence suggest voluntariness was at issue.  *See State v. Smith*, 114 Ariz. 415, 419 (1977) (not raised by counsel); *State v. Finn*, 111 Ariz. 271, 275 (1974) (not raised by evidence).  During Adair's second interview in February 2016, the civilian interviewer stated he believed

---

[1]       Adair claims his polygraph statements were involuntary because the detective warned him in November 2015 that if he did not submit to a polygraph exam she would convene a grand jury and a warrant would be issued for his arrest, and thus Adair claims he did not feel like he had a choice.  No evidence supports Adair's claim, and no polygraph statements were introduced as evidence before the jury.

[2]       Regarding his denial of any plea deal, the court offered Adair the opportunity to consider a plea deal at the beginning of trial, which he declined to do, stating he was aware of the consequences he could suffer if found guilty.

Adair was speaking to police to reach out for help, and described those who were not willing to change as more dangerous and unwilling to tell the truth. However, stating that the defendant was there to tell the truth and make amends is not coercive. *See State v. Walton*, 159 Ariz. 571, 579 (1989) (finding that statements such as "[i]t's nothing that can't be worked out" and "to lie isn't going to help . . . give yourself a chance" were the detective's opinions and not an express or implied promise). Nor does the evidence indicate Adair was compelled to be there. The civilian interviewer spoke in a relaxed tone, and even offered Adair consolation when he became upset. Though the interviewer and Adair agreed that telling the truth presented a better attitude and sense of character for Adair and was the first step to rectify the situation, at no point did the interviewer guarantee or suggest to Adair that he would receive a lesser sentence if he confessed. *See State v. Villalobos*, 225 Ariz. 74, 79, ¶ 14 (2010) ("The polygrapher's request that Villalobos tell the truth to 'get out of this hole' was also permissible."); *State v. Amaya-Ruiz*, 166 Ariz. 152, 165 (1990) ("Mere advice from the police that it would be better for the accused to tell the truth when unaccompanied by either a threat or a promise does not render a subsequent confession involuntary."). Neither do we consider the interviewer's statement that the person deciding the case would be interested in whether Adair told the truth and was remorseful to be an inaccurate statement or coercive. To the extent the interviewer appealed to religion to get Adair to tell the truth, he did not suggest anything other than having Adair tell the truth and does not evidence Adair's will being overborne. *See State v. Newell*, 212 Ariz. 389, 400, ¶¶ 47-48 (2006) ("'[G]et[ting] right with God,' confessing sins, and asking for forgiveness . . . do not render confessions involuntary unless they lead to the suspect's will being overborne.").

¶14        Upon the detective entering, Adair indicated that he had previously been read his *Miranda*[3] rights and understood them. The detective stated she was only trying to determine the truth, to which Adair confessed to initially touching Victim's genitals with his hand while lying in bed because Victim was restless. Adair stated he touched Victim's genitals four to five times again over the year while Victim was roughly ten years old and admitted to digitally penetrating her on at least three occasions. Adair admitted showing Victim a sexual video. Adair denied ever having Victim touch his penis, and denied touching Victim for sexual gratification, though he knew it was a mistake. The detective never told Adair he would receive a sentence of probation if he confessed, and no plea

---

[3]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

deal was ever presented, promised, or suggested. Adair did not attach or introduce any other recordings of the interview.

¶15 At trial, Adair's counsel cross-examined the detective whether she had made any promises to Adair, which she denied, and which the recorded interview does not show any evidence of. The jury was shown the video of the interview, given the instruction regarding the voluntariness of statements, and instructed to disregard "any statements made by the defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily." Adair's claims do not supply an adequate basis to find reversible error.

II.      Ineffective Assistance of Counsel

¶16 Adair argues his counsel failed to advise him of his rights during the indictment or arraignment hearings. Because this is a claim for ineffective assistance of counsel, which may not be raised on direct appeal, we do not consider it. *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007). Instead, Adair must present this claim to the superior court in a post-conviction relief proceeding. *Id.*

III.     Other Issues

¶17 We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Adair at all stages of the proceedings, and the sentences imposed were within the statutory guidelines. We decline to order briefing and affirm Adair's convictions and sentences.

¶18 Upon the filing of this decision, defense counsel shall inform Adair of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Adair shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

¶19   For the foregoing reasons, we affirm Adair's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA