NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL GUERRERO, *Appellant.*

No. 1 CA-CR 25-0190

FILED 02-27-2026

Appeal from the Superior Court in Maricopa County
No. CR2023-158455-002
The Honorable Suzanne Scheiner Marwil, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Cynthia Dawn Beck, Lindsay Ficklin
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun, Kyla Padbury (Certified Limited Practice Student)
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Vice Chief Judge David D. Weinzweig joined.

_____

**B R O W N**, Judge:

¶1          Defendant Michael Guerrero appeals from his conviction and resulting sentence for unlawful flight from a law enforcement vehicle. He argues the trial court erred by denying his request for a mistrial after one of the State's witnesses violated a pretrial ruling.  Because no reasonable probability exists that the error influenced the jury's verdict, we affirm.

## BACKGROUND

¶2          Around nine o'clock one evening, an officer driving a marked patrol car noticed a black Honda Civic that had been identified as part of armed robbery investigation.  The officer followed the car, which Guerrero was driving. Suddenly, Guerrero accelerated to more than 60 miles per hour in a residential area even though the speed limit was 30. After activating the patrol car's emergency lights and siren, the officer pursued Guerrero for about two blocks, or approximately ten seconds. Because a police helicopter was "overhead to continue surveillance on the vehicle," the officer slowed down and turned off the lights and siren with the hope it would allow Guerrero to "slow down and create less of a risk in [the] neighborhood."

¶3          After a few blocks, Guerrero stopped the car, dropped off a passenger, and resumed speeding. The helicopter maintained visual contact as Guerrero entered a freeway, moving "much faster than the flow of traffic, weaving in and out of traffic."  At some point he slowed down to move with the flow of traffic and unmarked police vehicles followed at a distance.  After Guerrero had driven about ten miles and exited the freeway, officers used a special device (grappler) to forcibly stop his car and eventually took him into custody.

¶4          During an interview with a detective, post-*Miranda* warnings, Guerrero admitted he noticed the police vehicle behind him,

saw the lights, heard the siren, did not stop, and ran from the car after the freeway chase. The State then charged Guerrero with willfully fleeing or attempting to elude a pursuing marked law enforcement vehicle, a class 5 felony.

¶5　　　　　Before trial, Guerrero filed a motion in limine to prevent the State from introducing evidence about the armed robbery. In his motion, Guerrero alleged he drove his cousin to the store to buy diapers, remaining in the car while his cousin was in the store. His cousin returned to the car without diapers and they drove away. When his cousin noticed a police vehicle following them, he aggressively demanded that Guerrero "speed up, don't stop" but did not tell Guerrero he committed a robbery. Because Guerrero was not charged with armed robbery, he asked the court to prevent the State from disclosing why the police tried to pull him over. But he agreed the State's witnesses could testify that police officers pursued the Honda Civic as part of an investigation. The trial court granted the motion.

¶6　　　　　The officer who first tried to stop Guerrero testified at trial. Following his testimony, a juror submitted a question, asking, "why did [the officer] follow the car in question?" The officer explained he followed Guerrero because the car was "involved for the call that we were on." The court then instructed the jury that "given the elements of this charge, you don't need to concern yourselves with the reasons for the stop of the car in question. You can be assured that the stop was lawful."

¶7　　　　　The next day, a different officer who was involved in the freeway chase testified that he was part of the Special Assignments Unit, which is "tasked with apprehension of violent criminals [including] homicide suspects, robbery suspects, kidnapping suspects." No objection was made. Several questions later, when asked why he responded to the incident, the officer said that his "[u]nit was requested due to an armed robbery investigation." Defense counsel did not immediately object but after several more questions were asked, none of which mentioned armed robbery, defense counsel requested a bench conference and moved for a mistrial based on the violation of the motion in limine. The trial court denied the motion but offered to give a curative instruction to the jury.

¶8　　　　　The court then told the jury: "[Y]ou are charged with simply evaluating what the defendant is charged with. You should not concern yourself[,] for purposes of evaluating that charge[,] on the subject of the investigation." The final jury instructions included the following: "You should not concern yourself with the reason for the law enforcement stop

of the defendant. You should only consider whether the State has proven the elements of the charged offense."

¶9         The jury returned a guilty verdict and the trial court sentenced Guerrero to two years' imprisonment. Guerrero timely appealed. We have jurisdiction under A.R.S. §§ 12-2101(A)(1) and 13-4031, -4033(A).

## DISCUSSION

¶10         Guerrero argues the trial court erred by denying his mistrial motion. He asserts the "violation of the motion in limine was so prejudicial that it ultimately deprived him of a fair trial and thwarted justice." We review the denial of a motion for a mistrial for an abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, 142, ¶ 57 (2000).

¶11         When considering whether a mistrial is appropriate based on a witness's testimony, a court determines "(1) whether the testimony called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the testimony influenced the jurors." *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003).

¶12         As to prong one, Guerrero argues the second officer's reference to the armed robbery investigation called the jurors' attention to unnecessary information when determining whether the State proved the elements of unlawful flight, *infra* ¶ 15. Guerrero also points to the juror question on why the police followed the car, *supra* ¶ 6, to establish the jurors' interest in the reason for pursuit.

¶13         The trial court granted the motion in limine because the court recognized that jurors would likely view armed robbery as a dangerous and violent crime, which could negatively affect the jury's view of Guerrero. This was especially true given the testimony detailing the extensive law enforcement response, including a high-speed chase in a neighborhood, a helicopter, and a grappling device. The State did not charge Guerrero with armed robbery, and Guerrero maintained that he had no knowledge of the crime. Thus, any testimony connecting Guerrero to the armed robbery investigation called the jurors' attention to inappropriate matters.

¶14         But Guerrero's argument fails under the second prong of the analysis—the probability that the improper testimony influenced the jurors. *See Lamar*, 205 Ariz. at 439, ¶ 40. As stated in A.R.S. § 28-622.01, a

4

"driver of a motor vehicle who wilfully flees or attempts to elude a pursuing official law enforcement vehicle is guilty" of unlawful flight if the law enforcement vehicle is "appropriately marked to show that it is an official law enforcement vehicle" and is being operated in accordance with A.R.S. § 28-624(C). That section outlines that an authorized emergency vehicle operated as a police vehicle must "sound[] an audible signal by bell, siren or exhaust whistle" while in motion. A.R.S. § 28-624(C).

¶15 The State presented substantial evidence supporting each element of the crime. Indeed, Guerrero admitted to law enforcement that he was aware of the police vehicle behind him and heard the siren but did not stop. He even admitted to seeing the vehicle's emergency lights, further showing he was aware of the pursuing law enforcement vehicle. Given the strength of the evidence presented at trial, "there is no reasonable probability that the verdict would have been different," *State v. Kleinman*, 250 Ariz. 362, 365, ¶ 13 (App. 2020), had the officer avoided the brief, but nonetheless improper, reference to an armed robbery investigation.

¶16 On top of that, the trial court instructed the jurors twice that they need not concern themselves with the reason for the pursuit. The court explained the stop was lawful, and they should only consider whether the State proved the elements of unlawful flight. The court also included a limiting instruction in the final jury instructions. We presume that juries follow curative instructions, *State v. Dann*, 205 Ariz. 557, 571, ¶ 48 (2003), and limiting instructions, *State v. Prince*, 204 Ariz. 156, 158, ¶¶ 7–9 (2003). The court did not abuse its discretion in denying Guerrero's motion for mistrial.

## CONCLUSION

¶17 We affirm Guerrero's conviction and sentence.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

5